UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

Civil Action No.  04-12433-JLT

* * * * * * * * * * * * * * * * * * * * * * * *
                                              *
                                              *
New Bedford Fishermen's Pension Trust,        *
By its Trustees,                              *
                                              *
                    Plaintiff                 *
vs.                                           *
                                              *
Silva Fishing Corp., Owner of the             *
F/V Lutador,                                  *
                                              *
                    Defendant                 *
                                              *
* * * * * * * * * * * * * * * * * * * * * * * *

## JOINT PRETRIAL MEMORANDUM

**1.    Summary of Evidence**

    1.1.    <u>Plaintiff's Summary of Evidence</u>

        Silva Fishing Corp., the owner of the fishing vessel (F/V Lutador), was a contributing employer to the New Bedford Fishermen's Pension Plan ("NBFPP"), a multi-employer plan.  Silva Fishing Corp. sold the F/V Lutador thereby triggering a withdrawal liability.  The administrator of the NBFPP learned that the F/V Lutador was going to be sold.  She told Jose Silva, the president and principal of Silva Fishing Corp., when it sold the vessel, there would be a withdrawal liability.  Jose Silva told the administrator he would not pay it and refused to provide information as to the then pending sale.

        The actuary for the NBFPP, Basil Castrovinci Associates, Inc., calculated the withdrawal liability to be $68,382.09.  The NBFPP demanded payment.  This lawsuit was filed

04-12433-JLT

to obtain security for the payment of the withdrawal liability. Silva Fishing Corp. failed to comply with statutory procedures and plan procedures to challenge the asserted liability within the 90-day time period allowed. Silva Fishing Corp. failed to initiate arbitration within the 90-day time period allowed. The failure to take such actions bars Silva Fishing Corp. from contesting the fact and amount of liability.

Silva Fishing Corp. failed to timely pay its quarterly withdrawal liability payments due on April 1, 2006, and July 1, 2006.

The NBFPP expects that Thomas P. Tierney, its expert actuary, will testify that the NBFPP's five percent (5%) expense liability assumption for purposes of calculating withdrawal liability is reasonable; that the actuarial assumptions used produced a reasonable result; and that the $68,382.09 withdrawal liability was computed correctly.

NBFPP expects Thomas P. Tierney to testify that Basil Castrovinci Associates, Inc. did not err in its use of the year 2000 contribution information in calculating the withdrawal liability.

NBFPP expects Thomas P. Tierney to testify that Silva Fishing Corp.'s actuary misunderstands the nature of a requirement for the year 2000.

NBFPP expects Thomas P. Tierney to testify that the 3.84% expense liability proposed by Silva Fishing Corp. is flawed. That Silva Fishing Corp.'s actuary used the wrong expense figure for 2004 and that for the years after 2004, did not adjust the 2004 expense figure for inflation.

Following the trial and the court's ruling on whether NBFPP is entitled to interest, liquidated damages, and attorney's fees with regard to the claim for withdrawal liability, and

2

affidavit of attorney's fees, costs, and liquidated damages would be submitted for the court's consideration.[1]

### 1.2. Defendant's Summary of Evidence

Defendant anticipates presenting evidence regarding two errors in the method in which the NBFPP calculated the withdrawal liability of Silva Fishing Corporation. The errors involve: (a) the method in which the actuary treated the 2000 Plan Year Contributions; and (b) the assumption of future administrative expenses made by the actuary.

#### a. 2000 Plan Year Contributions

According to the NBFPP's plan documents (and the anticipated testimony), during the year 2000, employers participating in the pension fund were allowed to make required pension contributions into either the NBFPP or its companion fund the New Bedford Fishermen's Welfare Fund. During that year, (to the benefit of the NBFPP) Silva Fishing Corporation chose to make its required contributions to the NBFPP. At the same time, a number of other New Bedford boat owners chose to make no contributions to the NBFPP. Instead, they contributed only to the New Bedford Fishermen's Welfare Fund. As a result, Silva Fishing Corp.'s 2000 plan year contributions to the NBFPP as a percentage of total 2000 plan year contributions to the NBFPP was significantly and artificially increased. Specifically, Silva Fishing Corp. made 20.9% of the total contributions in 2000. In the four remaining years, Silva Fishing Corp.'s percentage of total contributions averaged 6.1%. The actuarial calculations made no adjustment for this aberration.

Section 9.3 of the NBFPP Plan states that the employer liability denominator shall include "the total amount required to be contributed by all Employers". Despite this language,

---

[1] For additional information regarding NBFPP's actuarial calculations, see Plaintiff's expert report - Declaration of Thomas P. Tierney in Support of Plaintiff's Withdrawal Liability Calculation

the withdrawal liability calculation made in this case does not include the total amount required to be contributed by all employers for the 2000 year. Instead, it includes only those contributions that were actually made to the Pension Fund. The failure to use the total required contributions of all employers significantly decreased the denominator and artificially increased Silva Fishing Corp.'s Withdrawal Liability.

Defendant expects that its actuary will testify that two fair and reasonable methods could be employed to adjust for this error. The NBFPP could either: (a) re-calculate the entire 2000 actuarial numbers to include all of the participating boats - a process which would likely be expensive and difficult to accomplish; or (b) discount the aberrant year 2000 and use the average for the remaining four years to make the Withdrawal Liability calculation. If the more efficient option (b) were employed, Defendant's actuary will testify that Silva Fishing Corp.'s withdrawal liability would be reduced to $56,700.

### Assumption Regarding Future Expenses

Under the formula employed by the NBFPP actuary, the assumed future administrative expenses are removed from the fund's assets prior to determining the amount of any vested liability shortfall. In this case, the actuary placed a present value of future administrative expenses at 5% of the vested liability of the fund. This assumption is incongruent with the plan's own budget documents which predict that the administrative expenses will be significantly less than 5% of the vested liability of the fund. According to the plan documents, the anticipated future administrative expenses would be 3.84% of the vested liability of the fund. Defendant's actuary will testify that if the NBFPP reduced the anticipated expenses to align with their actual budgeted assumptions, the withdrawal liability of Silva Fishing Corp. would be reduced to $50,241.

Conclusion

Silva Fishing Corporation expects the evidence to show that the manner in which the NBFPP handled both the contribution history and the future expense assumption were unreasonable. The net impact of these errors significantly exaggerated Silva Fishing Corp.'s withdrawal liability. If both of these errors are corrected, the proper withdrawal liability would be $41,658. [2]

**2.    Agreed upon Facts Established by Pleadings, Stipulations, and Admissions**

2.1    The NBFPP is a multi-employer pension plan which provides retirement, death, and disability benefits to covered employees of participating employers.

2.2    The operation of the plan is governed by the New Bedford Fishermen's Pension Plan Regulations restated as of January 1, 2003, and amendments thereto, including an amendment effective January 1, 2003, regarding calculation of withdrawal liability.

2.3    The laws governing the operation of the plan are the Taft-Hartley Act, the Employee Retirement Income Security Act of 1974 (ERISA), and the Multi-Employer Pension Plan Amendments Act of 1980 (MEPPAA).

2.4    When an employer ceases to have an obligation to contribute to the pension plan, i.e. it withdraws, it incurs a withdrawal liability. The withdrawal liability may be zero or an amount greater than zero.

2.5    The calculation of the withdrawal liability is governed by MEPPAA.

2.6    Silva Fishing Corp. was the owner of the F/V Lutador and was a contributing employer to the NBFPP.

---

[2] For additional information regarding the Defendant's actuarial calculations, please refer to Defendant's Expert Disclosure and report produced by Jason Denton, A.S.A., E.A.

2.7     On or about November 8, 2004, Silva Fishing Corp. sold the F/V Lutador triggering a withdrawal liability.

2.8     The NBFPP sent by certified and regular mail and Silva Fishing Corp. received a notice of withdrawal liability dated November 10, 2004, with the withdrawal liability stated to be in the amount of $68,382.09 and demanding payment in accordance with a schedule set forth in the notice.

2.9     The NBFPP filed the complaint in this matter on November 18, 2004, and a stipulation and order was entered December 13, 2004, whereby Silva Fishing Corp. was to pay its counsel $73,500 to be held in escrow by its attorney with the ability to make its withdrawal liability payments to the NBFPP.  In the stipulation, Silva Fishing Corp. did not waive its right to contest the asserted liability or the amount thereof and the NBFPP did not waive their right to seek funds in excess of $73,500.

2.10    Silva Fishing Corp. did not raise specific issues in writing, certified mail, to the NBFPP within 90 days after it received the notice dated November 10, 2004. Silva Fishing Corp. served an answer to NBFPP's complaint on January 6, 2005.

2.11    Silva Fishing Corp. did not in writing by certified mail request arbitration within the time frame specified in the NBFPP or in the law governing the plan.

2.12    Silva Fishing Corp. made the following payments toward the withdrawal liability on the dates shown:

| Date Paid | Amount Paid | Date Due |
|-----------|-------------|----------|
| 12/28/04 | $4,180.79 | 1/1/05 |
| 3/29/05 | $4,180.79 | 4/1/05 |

6

|           |            |         |
|-----------|------------|---------|
| 5/27/05   | $4,180.79  | 7/1/05  |
| 9/1/05    | $4,180.79  | 10/1/05 |
| 12/30/05  | $4,180.79  | 1/1/06  |
| 4/3/06    | $4,180.79  | 4/1/06  |
| 9/7/06    | $4,180.79  | 7/1/06  |
| 9/7/06    | $4,180.79  | 10/1/06 |

Total Paid To Date:    $33,446.32

3.    **Contested Issues of Fact**

3.1    Whether Jose Silva, a principal of Silva Fishing Corp., told the NBFPP administrator he would not pay a withdrawal liability, and whether this fact is relevant to the issues before the Court at this time.

3.2    Whether Jose Silva, a principal of Silva Fishing Corp., refused to provide information as to the then pending sale of the F/V Lutador, and whether this fact is relevant to the issues before the Court at this time.

3.3    Whether the actuarial assumptions and methodologies used in the calculation of withdrawal liability are reasonable.

3.4    Whether the withdrawal liability calculation for Silva Fishing Corp. of $68,382.09 was computed correctly.

3.5    Whether Silva Fishing Corp., within the permissible time frame and in the manner prescribed, (a) requested the trustees to review any specific matter relating to the determination of the withdrawal liability and the schedule of payment; (b) identified any inaccuracy in the determination of the amount of unfounded vested benefits allocable to Silva Fishing Corp.; (c) furnished additional relevant

information to the trustees; and (d) presented information to the trustees to support any claim that reductions may apply. And, whether these procedural requirements became unnecessary once the NBFPP placed withdrawal liability at issue by instituting this civil action.

3.6     Whether the conduct of representatives of Silva Fishing Corp. was such that it is to be deemed that it agreed to the determination of the amount of withdrawal liability and schedule of payments.

## 4.     Jurisdictional Questions

None.

## 5.     Questions Raised by Pending Motions

None.

## 6.     Issues of Law

6.1     Plaintiff's Statement of Issues of Law

6.1.1     Whether Silva Fishing Corp. is precluded from challenging the amount of withdrawal liability asserted by the NBFPP due to its failure to contest the liability in accordance with the terms of the NBFPP Regulations regarding bringing matters to the trustees.

6.1.2     Whether Silva Fishing Corp. is precluded from challenging the amount of withdrawal liability asserted by the NBFPP by its failure to request arbitration in accordance with the MPPAA at 29 USCA §1401(a)(1) and the NBFPP Regulations at Paragraph 9.10 requiring that disputes regarding a determination of a withdrawal liability be resolved through arbitration.

6.1.3   Whether Silva Fishing Corp. has the burden of proof by a preponderance of evidence that the NBFPP's determination of withdrawal liability was unreasonable or clearly erroneous. *See* 29 USCA §1401(a)(3)(A).

6.1.4   Whether Silva Fishing Corp. must pay, in addition to its withdrawal liability, all interest, liquidated damages, and attorney's fees.

6.2   Defendant's Statement of Issues of Law

6.2.1   Whether, in this case, Silva Fishing Corp. is precluded from challenging the amount of withdrawal liability asserted by the NBFPP where it failed to contest the liability in accordance with the terms of the NBFPP Regulations regarding bringing matters to the trustees; but where Silva Fishing Corp. alleges that this procedural requirement became unnecessary when the NBFPP chose to file the instant action before Silva Fishing Corporation had an opportunity to hire an actuary to challenge the calculation; and where Silva Fishing Corporation challenged the calculation in its Answer to the Complaint.

6.2.2   Whether, in this case, Silva Fishing Corp. is precluded from challenging the amount of withdrawal liability asserted by the NBFPP where it failed to request arbitration in accordance with the MPPAA at 29 USCA §1401(a)(1) and the NBFPP Regulations at Paragraph 9.10 requiring that disputes regarding a determination of a withdrawal liability be resolved through arbitration, but where Silva Fishing Corp. alleges that this procedural requirement became unnecessary when the NBFPP chose to file the instant action before Silva Fishing Corp. had an opportunity to hire

an actuary and to challenge the calculation; and where Silva Fishing
Corporation challenged the calculation in its Answer to the Complaint.

**7.    Amendments to Pleadings**

Plaintiff requests that it be permitted to amend its complaint to assert in the relief
requested that the funds of Silva Fishing Corp. held by Attorney Markey pursuant to the
Stipulation and Order dated December 13, 2004, be paid to the NBFPP in a lump sum
toward the judgment plaintiff is likely to recover, including withdrawal liability, all
interest, liquidated damages, and attorney's fees; and in the alternative, with security for
quarterly payments.

Defendant reserves the right to continue to make payments over time in accordance with
the schedule set forth by the NBFPP and/or to the right to reach a compromise with the
NBFPP as to payment terms and schedule.

**8.    Additional Matters to Aid in the Disposition of the Action**

8.1    Copies may be admitted the same as originals.

8.2    NBFPP be permitted to submit an affidavit following the court's ruling on its
request for attorney's fees, costs, interest, and liquidated damages.

**9.    Probable Length of Trial**

8  hours

**10.    Witnesses**

10.1    Plaintiff's Proposed Witnesses                     Expected Time Needed

10.1.1    Ana C. Salvador, plan administrator         2  hours

10.1.2    Thomas Tierney, expert witness             1½-2 hours

10.2    Defendant's Proposed Witnesses

10

| | | |
|---|---|---|
| 10.2.1 | Edie Mikina | 15-20 minutes |
| 10.2.2 | Jason Denton, expert witness | 60-90 minutes |

**11.    Exhibits**

11.1    Agreed upon Exhibits

11.1.1    New Bedford Fishermen's Pension Regulations Restated as of January 1, 2003

11.1.2    November 10, 2004 Letter - NBFPP to Silva Fishing Corp.

11.1.3    January 1, 2001 - NBFPP - Annual Valuation Report

11.1.4    January 1, 2004 -NBFPP - Annual Valuation Report

11.1.5    2000 - NBFPP Contribution Ledgers

11.1.6    Collective Bargaining Agreement made 3/1/3/95

11.1.7    Memorandum of Understanding dated 2/25/98

11.1.8    Memorandum of Understanding dated 10/20/99

11.1.9    Memorandum of Understanding dated 2/26/01

11.1.10    Amendment to the New Bedford Fishermen's Pension Regulations Restated as of January 1, 2003

11.1.11    New Bedford Fishermen's Pension Fund Actuarial Valuation Report as of January 1, 2004

11.1.12    New Bedford Fishermen's Pension Fund Actuarial Valuation Report as of January 1, 2005

11.1.13    Actuarial information attachment as Schedule B of Form 5500 dated July 15, 2005

11.1.14    November 9, 2004, 2-page letter from Basil Castrovinci, Inc. to the New Bedford Fishermen's Pension Trust

11.1.15    Declaration of Thomas P. Tierney in Support of Plaintiff's Withdrawal Liability Calculation

11.1.16    Form 5500 - 2004

11.1.17    Actuarial information attachment as Schedule B of Form 5500 for year 2003

11.2    Defendant's Additional Exhibits

11.2.1    Actuarial Assumptions - NBFPP - F/V Lutador

11.3    Plaintiff's Additional Exhibits

11.3.1    Markey to Kelleher Memorandum of 11/9/05

11.3.2    Notice of Withdrawal Liability dated November 10, 2004

11.3.3    March 31, 2006, letter from Markey to Kelleher

11.3.4    September 7, 2006, letter from Markey to Kelleher

**12.    Motion in Limine**

None.

Silva Fishing Corp.                              New Bedford Fishermen's Pension Trust
By its attorneys                                 By its attorneys

_____/s/ John A. Markey, Jr._____            _____/s/ Mary E. Kelleher_____
John A. Markey, Jr., BBO# 633540                 Mary E. Kelleher, BBO# 544537
Moses, Smith & Markey, LLC                       Mickelson Barnet, P.C.
50 Homers Wharf                                  30 Cornell Street
New Bedford, MA 02740                            New Bedford, MA 02740
(508) 993-9711                                   (508) 993-8800
mosessmith.markey@verizon.net                    mek@mickelsonbarnet.com

Date:  September 29, 2006

I hereby certify that this document filed
through the ECF system will be sent
electronically to the registered participants
as identified on the Notice of Electronic
Filing (NEF) on September 29, 2006.