UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

Civil Action No. 04-12433-JLT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

New Bedford Fishermen's Pension Trust,
By its Trustees,

     Plaintiff

vs.

Silva Fishing Corp., Owner of the
F/V Lutador,

     Defendant

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**PLAINTIFF'S REQUEST FOR FINDINGS OF FACT
AND RULINGS OF LAW**

1. The New Bedford Fishermen's Pension Plan (hereafter "NBFPP") is a so-called multi-employer pension plan supervised by a board of trustees in which the employees of more than one employer participate.

2. The primary laws governing the operation of same are the Taft-Hartley Act, the Employee Retirement Income Security Act of 1974 (hereafter "ERISA"), and the Multi-Employer Pension Plan Amendments Act of 1980 (hereafter "MEPPAA").

3. Silva Fishing Corp. was a participating employer in the NBFPP.

4. When a participating employer withdraws from a multi-employer plan, the withdrawing employer is assessed a withdrawal liability charge as required by MEPPAA to cover the guaranteed of employee accruals. This withdrawal liability charge may be zero or an amount greater than zero.

5. Silva Fishing Corp. was the owner of the F/V Lutador.

6. At all times relevant hereto, Jose Silva was the president of Silva Fishing Corp.

7. In October 2004, Jose Silva orally informed the plan administrator that he was going to sell his vessel.

8. The plan administrator told him he would incur a withdrawal liability.

9. He told the plan administrator he would not pay.

10. The plan administrator asked Jose Silva to provide information as to the date of the sale and the identity of the buyer, but did not receive that information until after this lawsuit was filed. The failure of Jose Silva to provide written notice of the proposed sale of his vessel violated NBFPP Regulations.

11. On November 10, 2004, the NBFPP notified Silva Fishing Corp. of the amount of its withdrawal liability, a schedule of payments, and a demand for payment in writing by certified mail, return receipt requested, and also by regular mail.

12. Said notice and demand was in accordance with 29 USC §1399(b) which governs the notice and collection of withdrawal liability for multi-employer plans.

13. Notice and demand was also in accordance with Paragraph 9.2(b) of the NBFPP Regulations (Restated as of January 1, 2003), as amended by "New Bedford Fishermen's Pension Fund Amendment Effective January 1, 2003" affecting Paragraph 9.3 of the Regulations, (hereafter "Regulations").

14. Silva Fishing Corp. received said notice on November 11, 2004.

15. Defendant had 90 days after it received the notice of withdrawal liability and demand for payment to take the following action in written form and send same by certified mail, return receipt, or by hand delivery to the trustees: to ask the board of trustees to review any specific matter relating to the determination of the employer's liability and the

schedule of payments; to identify any inaccuracy in the determination of the amount of the unfunded vested benefits allocable to Silva Fishing Corp.; to furnish any additional relevant information to the board of trustees; and to present all information to the board of trustees to support any claim that reductions or limitations may apply. *See* 29 USC §1399(b)(2)(A) and Paragraph 9.2(c) of the NBFPP Regulations.

16. If the employer fails to take any of the actions specified in Paragraph 9.2(c) of the NBFPP Regulations within the 90 days, it shall be deemed to have agreed to the determination of the trustees as to the amount of withdrawal liability and waived the application of the Regulations set forth in Paragraph 9.2(c). *See* Paragraph 9.2(d) of the NBFPP Regulations.

17. Silva Fishing Corp. failed to take any of the actions specified in Paragraph 9.2(c) of the NBFPP Regulations in written form and by certified mail or hand delivery and thereby Silva Fishing Corp. is deemed to have agreed to the determination of the amount of withdrawal liability and schedule of payments set forth in the NBFPP's notice to Silva Fishing Corp. dated November 10, 2004. *See* Paragraph 9.2(d) of the NBFPP Regulations.

18. In accordance with 29 USC §1401(b)(1), if no arbitration proceeding has been initiated pursuant to 29 USC §1401(a), the amount of the withdrawal liability demanded by the plan sponsor under 29 USC §1399(b)(1) shall be due and owing on the schedule set forth by the plan sponsor.

19. The time frame for an employer to request arbitration is within a 60-day period after the earlier of (A) the date the employer received the fund's response to issues raised by the employer within the 90-day period after the initial notice of withdrawal liability pursuant

to 29 USC §1399(b)(2)(A); or (B) 120 days after the date of the employer's request to the plan under 29 USC §1399(b)(2)(A). *See* 29 USC §1401(a)(1).

20. The timeline for the initiation of arbitration under 29 USC 1401(a)(1) has been explained as follows: it "provides for three situations: (1) if the employer requests reconsideration of the liability assessment and the plan sponsor responds within 120 days, the employer has 60 days from the response; (2) if the employer requests reconsideration and its plan sponsor does not respond within 120 days, the employer has 180 days (120 plus 60) from the request for reconsideration; and (3) if the employer never requests reconsideration, the employer has 90 days from its first notice of the liability assessment." Board of Trustees of Trucking Employers of North Jersey Welfare Fund, Inc. Pension Fund v. William A. Canny, 900 F.Supp. 583, 589 Footnote 1 (EDNY 1995) citing Bowers v. Transportacion Maritima Mexicana, S.A., 901 F.2d 258, 263 (2d Cir. 1990).

21. If no arbitration is initiated pursuant to 29 USC §1401(a)(1), then the amount demanded by the plan sponsor in its notice of withdrawal liability shall be due and owing. *See* 29 USC §1401(b)(1).

22. Insofar as NBFPP sent notice and demand to Silva Fishing Corp. on November 10, 2004, of its withdrawal liability, and Silva Fishing Corp. did not respond in writing in accordance with 29 USC §1399(b)(2)(A) within 90 days, and also did not initiate any arbitration within the time frame set forth in 29 USC §1401(a), then, in accordance with 29 USC §1401(b)(1), the withdrawal liability as set forth in said notice is now due and owing. The Massachusetts United States District Court has upheld this law, holding that, under MEPPAA if an employer fails to properly request arbitration, the employer is thereafter barred from contesting the fact or amount of withdrawal liability. *See*

4

Debrecini v. Perkins Trucking Co., Inc., not reported in F.Supp. (1986) WL 25436, 2 (D.Mass.) *See also* Debrecini v. George Lamoueir & Co., 629 F.Supp. 598, 602 USDC Mass (1986), holding that a defendant who failed to avail himself of arbitration may not thereafter raise defenses regarding the amount or fact of withdrawal liability in federal court.

23. Both the MEPPAA at 29 USC §1401(a)(1) and the NBFPP Regulations at Section 9.10 require that disputes regarding a determination by the trustees of a withdrawal liability be resolved through arbitration.

24. The initiation of the present lawsuit by the NBFPP, which was undertaken to ensure funds would be available to pay the withdrawal liability, did not affect the governance of 29 USC §1401(a)(1), and Section 9.10 of the Regulations.

25. Even after the lawsuit was filed, it remained the obligation of Silva Fishing Corp. to challenge the assessed withdrawal liability either through a written response specifically outlining challenges and issues in accordance with 29 USC §1399(b)(2)(A) and NBFPP Regulations at Section 9.2(c) and/or to initiate arbitration regarding the liability in accordance with 20 USC §1401(a)(1) and NBFPP Regulations at Section 9.10.

26. The institution of a civil lawsuit neither stays the time limitations imposed under 29 USC §1401(a)(1) to initiate arbitration, nor eliminates the obligation under said provision within such time limitations if the Employer wishes to challenge the amount or fact of the withdrawal liability. Board of Trustees of Trucking Employers of North Jersey Welfare Fund, Inc. Pension Fund v. William A. Canny, 900 F.Supp. 583, 595 (EDNY 1995). *See also* Bowers v. Transportacion Maritima Mexicana, S.A., 901 F.2d 258, 263 (2d Cir. 1990)

27. Silva Fishing Corp. did not send a written response to the withdrawal liability notice nor did it initiate arbitration within the applicable time frame.

28. There was no requirement upon the NBFPP to initiate arbitration as there was no written response from Silva Fishing Corp. in accordance with 29 USC §1399(b)(2) and NBFPP Regulations at Section 9.2(c) listing specific matters to reviewed, identifying alleged inaccuracies, or providing additional relevant information with regard to the assessed liability. Logically, without such a written response, the NBFPP had no basis to initiate arbitration.

29. In addition, under federal case law, there is no obligation on pension funds to initiate arbitration even where the employer demands same. Rao v. Prest Metals, et. al., 149 F.Supp. 2d 1 (EDNY 2001).

30. In the present case, the NBFPP had neither cause nor duty to initiate arbitration. This obligation fell to Silva Fishing Corp. if it wished to contest the assessed withdrawal liability.

31. While Silva Fishing Corp. has lost its right to challenge the fact or amount of withdrawal liability, NBFPP will still respond to Silva Fishing Corp.'s substantive arguments regarding the assessed withdrawal liability.

32. In accordance with 29 USC §1401(a)(3)(A), in any arbitration, any determination of withdrawal liability made by a plan sponsor is presumed correct unless the contesting party shows by a preponderance of the evidence that the determination was unreasonable or clearly erroneous. Therefore, the employer has the burden to prove by a preponderance of the evidence that the fund's actuarial calculation of withdrawal liability was inaccurate.

33. The calculation of withdrawal liability shall be determined by each plan on the basis of "actuarial assumptions and methods which, in the aggregate, are reasonable (taking into account the experience of the plan and reasonable expectations) and which in combination, offer the actuary's best estimate of anticipated experience under the plan." 29 USC 1393(a). <u>Keith Fulton & Sons, Inc. v. New England Teamsters and Trucking Industry Pension Fund, Inc.</u>, 762 F.2d 1137, Fn 3 at 1141 (CA1 1985).

34. "An employer's burden to overcome the presumption in question (by proof by a preponderance that the actuarial assumptions and methods were in the aggregate unreasonable) is simply a burden to show that the combination of methods and assumptions employed in the calculation would not have been acceptable to a reasonable actuary. In practical terms, it is a burden to show something about standard actuarial practice, not about the accuracy of a predictive calculation..." <u>Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension Trust for Southern California</u>, 1135 S.Ct. 2264, 508 US 602, 634-635 (1993).

35. Silva Fishing Corp. has not proved by a preponderance that the actuarial assumptions and methods used, in the aggregate, were unreasonable and not acceptable to a reasonable actuary.

36. The opinion by Thomas P. Tierney, NBFPP's actuarial expert, clearly shows the five (5%) percent expense liability assumption for the purpose of calculating withdrawal liability was reasonable, that the assumptions used produced a reasonable result, and the $68,382.09 was computed correctly.

37. In actions under MEPPAA, attorney's fees, interest, and liquidated damages are available on both a mandatory and discretionary basis.

38. In any successful action by a plan to enforce delinquent contributions, the MEPPAA provides that the court shall award to the plan mandatory interest, attorney's fees and costs and other appropriate equitable relief. *See* 29 USC §§1132(g)(2) and 1145. The MEPPAA further provides that in an action to compel an employer to pay a withdrawal liability, any failure of the employer to make a withdrawal liability payment within the prescribed time shall be treated in the same manner as a delinquent contribution. *See* 29 USC §1451(b).

39. In this case, Silva Fishing Corp. was obligated to pay the second quarter payment for 2006 on or before April 1, 2006, and failed to do so as the payment was not received until April 3, 2006. Silva Fishing Corp. was also obligated to pay third quarter payment on or before July 1, 2006, but failed to do so as the payment was not received until September 7, 2006.

40. Therefore, based on Silva Fishing Corp.'s late payments, this action is to be treated as one for delinquent contributions, and in accordance with 29 USC §§1132(g)(2), 1145 and 1451(b), NBFPP is entitled to a mandatory award of interest, attorney's fees, and costs.
In support of this position, *see* United Retail & Wholesale Employees Teamsters Union Local No. 15 Pension Plan v. Yahn & McDonnell, Inc., (affirmed an appeal to the US Supreme Court) which holds that attorney's fees are mandatory with regard to these provisions of MEPPAA relating to withdrawal liability, 787 F.2d 128, 3rd Cir. Ct. App. (1986). *See also*, Charles Langone Fund Manager of the New England Teamsters and Trucking Industry Pension Fund v. C. Walsh, Inc., wherein the USDC for Massachusetts held that plaintiffs were entitled to mandatory interest, damages, and attorney's fees with

regard to the claim for withdrawal liability, again, based on the same provision of MEPPAA. 864 F.Supp. 233, 235 (1994).

41. The NBFPP is also entitled to mandatory reasonable attorney's fees and costs under Section 9.8(g) of the Regulations.

42. Costs and expenses, including reasonable attorney's fees, are also available on a discretionary basis for any civil action under 29 USC §1451.

43. There are usually five factors considered regarding the award of discretionary attorney's fees which are as follows:

1. The degree of employer's bad faith or culpability.

2. The ability of the employer to personally satisfy an award of fees.

3. Whether such award would deter other persons acting under similar circumstances.

4. The amount of benefit to the action as conferred on the members of the pension plan.

5. The relative merits of the parties' position.

Malden Mills Industries, Inc., 780 F.Supp. 68, 72 (1991 USDC MA).

44. In this case, an award of attorney's fees, costs, and interest should be made in favor of NBFPP on a mandatory basis and in the alternative, on a discretionary basis in light of the conduct of the principal of Silva Fishing Corp. announcing his refusal to pay and failing to provide information requested by the NBFPP in connection with the sale of its vessel. To hold otherwise sets a bad precedence for other employers of the pension plan, which could have an ill effect on the members of the pension plan.

45. The NBFPP Regulations at Section 9.8(b) provide that upon a default, the entire outstanding amount of an employer's withdrawal liability, plus accrued interest and damages shall become immediately due and payable. "Default" is defined in Section 9.1(c) of said Regulations to include a situation where, after a request by the trustees, the employer is unable to provide adequate assurances, under all the facts and circumstances, that it is likely to pay its withdrawal liability.

46. Jose Silva, the principal of Silva Fishing Corp. directly stated to the NBFPP's plan administrator that he would not pay his withdrawal liability. In addition, Jose Silva demonstrated bad faith in intentionally not disclosing (as he was required to do under Section 9.7(e) of the Regulations) the details of the sale of his fishing vessel.

47. Based on the facts and circumstances, and the actions of Jose Silva himself, Silva Fishing Corp. is in default under Sections 9.1(c) and 9.8(f) of the Regulations, inasmuch as it has failed to provide adequate assurance that it is likely to pay its withdrawal liability. As such, the entire outstanding amount of the employer's withdrawal liability is now due and payable.

New Bedford Fishermen's Pension Trust
By its attorneys

_____/s/ Mary E. Kelleher_____
Mary E. Kelleher, BBO# 544537
Mickelson Barnet, P.C.
30 Cornell Street
New Bedford, MA 02740
(508) 993-8800
mek@mickelsonbarnet.com

Date: September 29, 2006

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on September 29, 2006.