UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

FILED
ERKS OFFICE

CC -3 P 12 14

DISTRICT COURT
DISTRICT OF MASS

Civil Action No. **04-12433 JLT**

| | |
|---|---|
| **New Bedford Fisherman's Pension Trust,**<br>**By its Trustees,**<br><br>**Plaintiff**<br><br>**vs.**<br><br>**Silva Fishing Corp., Owner of the**<br>**F/V Lutador,**<br><br>**Defendant** | **DECLARATION OF THOMAS P.**<br>**TIERNEY IN SUPPORT OF**<br>**PLAINTIFF'S WITHDRAWAL**<br>**LIABILITY CALCULATION** |

## DECLARATION OF THOMAS P. TIERNEY

I, THOMAS P. TIERNEY, declare and say:

1.     I have been retained as an expert witness in the case of New Bedford Fisherman's Pension Trust v. Silva Fishing Corp., Owner of the F/V Lutador filed in the United States District Court for the District of Massachusetts. All of the facts stated in this Declaration are based upon my personal knowledge, unless otherwise stated, and, if called to testify, I could and would competently testify to the facts identified and the opinions rendered.

## I.  **BACKGROUND**

2.     I received a Bachelor of Science Degree in Physics in from Boston College in 1964.  I received a Master of Science Degree in Actuarial Science from Northeastern University in 1968. I am a Fellow of the Society of Actuaries, a Member of the American Academy of Actuaries, a Member of the Boston Actuaries Club and an Enrolled Actuary under the Federal Employee Retirement Income Security Act of 1974.  I am qualified, under said Academy's Qualification Standards, to render the actuarial opinions set forth herein.

3.     From 1965 until 1977, I worked for The John Hancock Mutual Life Insurance Company (the "Hancock") in various positions including a number with pension plan development, actuarial and administrative responsibilities.  From July 1977, when I left the Hancock, to the present, I have worked as an independent consulting actuary - an activity that has included assignments as a consultant to various pension plans.

4.     Attached as Exhibit "A" hereto, in accordance with FRCP No. 26(a)(2)(B) and Daubert, is: (i) a true and correct copy of my most recent Curriculum Vitae;  (ii) a list of publications I have authored since January 1, 1992;  (iii) a list of other cases in which I've testified at trial as an expert since January 1, 1998;  and (iv) a list of other cases in which I've testified by deposition as an expert since January 1, 1998.

5.     In the positions described above, I have become familiar with the operation of virtually all of the types of pension plans currently in existence in the United States including Multiemployer and Multiple Employer arrangements.  In my experience as a consulting actuary, I have performed and certified approximately 30 Multiple Employer partial termination/spin-off calculations - - - computations that are almost identical, in an actuarial sense, to Multiemployer

withdrawal liability calculations although, legally, they're governed by Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA") and not by the Multiemployer Pension Plan Amendments Act of 1980 ("MEPPAA").

## II.   INVESTIGATION

6.    I have become familiar with and have obtained personal knowledge of the pension plan known as the New Bedford Fisherman's Pension Fund [the "Pension Plan"] and, in particular, with (a) the Pension Plan's procedures for calculating withdrawal liability assessments under MEPPAA and (b) the specifics of this computation process as it was applied to the withdrawal of Silva Fishing Corp., Owner of the F/V Lutador [the "Lutador"] from the Pension Plan.

7.    I have obtained this knowledge by consulting with Attorney Mary E. Kelleher (who is Plaintiff's counsel) and Basil Castrovinci, Jr. (who is the chief executive officer of Basil Castrovinci Associates, Inc. - - - the actuarial firm that services the Pension Plan) and by reviewing copies of:  (a) the 18-page January 1, 2004 New Bedford Fishermen's Pension Fund Actuarial Valuation report prepared by Basil Castrovinci Associates Inc. on May 27, 2004 [attached hereto as Exhibit "B"];  (b) the 2-page Castrovinci Associates-to-Pension Plan letter "Re: Withdrawal Liability for FV Lutador" dated November 9, 2004;  (c) the Complaint [including attachments] filed on November 18, 2004;  (d) an undated copy of Defendant's Answer to said Complaint;  (e) the Stipulation dated December 13, 2004 that was filed with the Court by both parties;  (f) the7-page "Actuarial Information" attachment that was filed on Schedule B of Form 5500 [published by the U.S. Department of The Treasury-Internal Revenue Service ("DoT-IRS"), the U.S. Department of Labor-Employee Benefit Security Administration ("DoL-EBSA") and the U.S. Pension Benefit Guaranty Corporation ("PBGC")] with the DoL on or about July 15, 2005 [attached hereto as Exhibit "C"].;  (g) the 1-page Markey-to-Kelleher memorandum dated "10/19/2005";  and (h) the 2-page Markey-to-Kelleher memorandum dated

"11/9/2005" [attached as hereto as Exhibit "D"].

8.    In the instant case, both parties agree that Defendant Lutador owes Plaintiff Pension Plan a withdrawal liability but the amount of same is in dispute.  Plaintiff Pension Plan has computed this amount to be $68,382.09 as of January 1, 2004 while Defendant Lutador is proposing an alternative computational process that, if adopted, would result in a $50,240.65 withdrawal liability as of that date - - - an amount that is $18,141.44 less than amount sought by the Plaintiff.

### III.    THE WITHDRAWAL LIABILITY CALCULATION PROCESS

9.    The Pension Plan is a so-called Multiemployer pension plan.  This is a retirement arrangement [that is supervised by a Board of Trustees consisting of an even number of Management and Labor representatives] in which the employees of more than one employer participate; and the primary laws governing the operation of same are the Taft-Hartley Act, ERISA and MEPPAA.  When a participating employer "withdraws" from a Multiemployer pension plan in which its employees are participating two things happen:

9.a.    First, the accrued-at-the-withdrawal-date retirement benefits of the withdrawing employer's employees or ex-employees who have participated in the pension plan prior to withdrawal continue to be guaranteed and provided, as required by ERISA, by the Multiemployer pension plan from which the employer is withdrawing; and

9.b.    Second, the withdrawing employer is assessed a withdrawal liability charge, as required by MEPPAA, to cover the guaranteed left-behind employee accruals.  This "withdrawal liability charge" may be zero or an amount greater than zero.

10.    A proper and appropriate MEPPAA withdrawal liability calculation process must meet three essential criteria:

10.a.    <u>First</u>, it must apportion the portion of the total vested liabilities of the plan that are not covered by plan assets [the plan's "total unfunded liability"] amongst the employers participating in the plan according to one of four accounting procedures provided for under MEPPAA. The Pension Plan has adopted the so-called "Rolling Five" MEPPAA accounting apportionment methodology and its use of same to determine the Lutador's withdrawal liability has not been questioned.

10.b.    <u>Second</u>, the calculation of the noted "total unfunded liability" must be made using reasonable actuarial assumptions and methodologies that are chosen by the plan. These assumption and methodology choices are presumed to be proper unless they can be shown, using a preponderance standard, to be unreasonable. In the instance case the Pension Plan has chosen, for withdrawal liability computation purposes, to utilize an actuarial assumption and methodology process that is used in [or is consistent with] the preparation of its "Actuarial Information" certification that is a part of the Pension Plan's Annual Report filing [submitted on DoT-IRS/DoL-EBSA/PBGC Form 5500] with the DoL.

10.c.    Such a choice would ordinarily be deemed reasonable by any knowledgeable reviewer, but in this case there is a concern because the noted "Actuarial Information" choice, while proper, is also incomplete. The problem is that the chosen process produces: (a) benefit costs, (b) benefit liabilities and (c) expense costs. It doesn't, however, directly generate (d) expense liabilities. This latter item is not needed or required for the plan's annual Form 5500 DoL filing but it is required for withdrawal liability calculations.

10.d.    To generate the needed "expense liabilities", the Plaintiff Pension Plan has chosen to determine them by assuming that they will equal 5.00% of the vested portion of the corresponding "benefit liabilities" - - a choice that it claims is consistent with the

associated "Actuarial Information" basis. The Lutador claims that the chosen "5.00%" figure is unreasonable and that a "3.84%" figure should be utilized. It is this 5.00% utilization, in lieu of a 3.84% choice, that has produced the $18,141.44 financial difference, noted above, that is the essence of the instant dispute.

10.e.    Third, the pension plan in question must consistently use the chosen accounting apportionment methodology and the chosen actuarial assumption and methodology process. It can only change them if the replacement basis meets the original choice criteria outlined above and if this change is disclosed to all of the pension plan's participating employers in advance.

11.    Implementing the Defendant Lutador-proposed 5.00% to 3.84% change would be difficult to do in arrears because all of the Pension Plan's other participating employers would have to unanimously and retroactively approve the switch. Moreover the Pension Plan has always used its current approach. Defendant Lutador, if it was unhappy with the withdrawal liability calculation procedure and as a practical matter, would have been better served by requesting a procedural change before its withdrawal, when it could have had an unfettered examination, rather than on an ex post facto basis when change becomes much more difficult.

## IV.   THE PENSION PLAN EXPENSE CALCULATION

**12.    The pension plan's 5.00% expense liability assumption is, in my opinion, reasonable** and, I believe, a majority of actuarial reviewers would concur with this opinion. **And**, since this is the only withdrawal liability assumption in dispute, **it is also my opinion that the noted $68,382.09 withdrawal liability was computed correctly.**

12.a. As an affirmation exercise, it would be helpful to analytically study the

appropriateness of this 5.00% assumption and the alternative 3.84% proposal.

12.b. Defendant Lutador arrived at their 3.84% expense liability assumption proposal by determining the above-discussed missing "expense liabilities" to be a "value of future administrative costs of $930,961.80" [Exhibit D]. This figure was approximated by multiplying an annual expense assumption of $123,000.00 by "an expected future working lifetime of 7.5666" years. Both the "$123,000.00" and the "7.5666" years were taken from the Castrovinci-prepared Actuarial Valuation Report that had a January 1, 2004 effective date [Exhibit B]. This process, in my opinion, was flawed because it did not "utilize an actuarial assumption and methodology process that is used in [or is consistent with] the preparation of . . . (the Pension Plan's) . . . 'Actuarial Information' certification" procedure that was adopted, as noted in Section 10.b. above, by the Pension Plan to calculate withdrawal liabilities.

12.c. The primary problem with the procedure described in Section 12.b. above is the "$123,000.00" annual expense assumption proposed by the Lutador. There are two reasons for this:

12.d. First, the $123,000.00 figure, which purports to be an estimate of the Pension Plan's 2004 Form 5500 "Actuarial Information" Expense Normal Cost as of 1-1-2004, is less than the actual amount of $136,740.00 that was embedded in the Pension Plan's 2004 calendar year Form 5500 DoL filing [the $553,252.00 1-1-2004 "Employer's normal cost" shown on line 9b of the 2004 Form 5500's "Actuarial Information" schedule (Exhibit C) reduced by the $412,782.00 benefit normal cost displayed on page 4 of the Castrovinci-prepared Actuarial Valuation Report that had a January 1, 2004 effective date (Exhibit B)]; and

12.e. Second, the Lutador approximation technique doesn't recognize that this

$136,740.00 corrected expense will be expected, under the plan's "Actuarial Information" actuarial assumption paradigm, to increase on account of inflation, for years after 2004, at a 4.50% per annum rate. The 4.50% inflation rate has been inferred from the plan's 6.50% "Actuarial Information" investment return assumption by offsetting it with the mid-point of the U.S. Supreme Court's 1-3% Pfeifer rule about the presumed excess of a gross investment rate over a corresponding inflation rate.

12.f. If the correct 1-1-2004 annual expense figure of $136,740.00 had been used and if it had been projected to increase by the Pfeifer-inferred 4.50% per year then the proposed Lutador expense computation process would have produce an expense liability assumption percentage of 4.96% - - - a figure that, with normal rounding, would equal the Pension Plan's 5.00% rate and a figure that is 1.12% above the 3.84% Lutador proposal.

12.g. Moreover, the "actuarial assumption and methodology process that is used in . . . the preparation of . . . an . . . 'Actuarial Information' certification" for a Taft-Hartley-regulated Multiemployer plan is not required to have actuarial assumptions that are individually reasonable. All that is required for this basis to be legally acceptable is for the assumptions in total to produce a reasonable result. This means that the Pension Plan withdrawal liability assumption definition [setting this basis equal to the Form 5500 Schedule B "Actuarial Information" valuation basis] does not require that the chosen expense assumption be in and of itself reasonable [even though I opined above that it is]. All that is required is that all of the selected actuarial assumptions when working in combination produce a reasonable result. As a practical matter, this means that the Defendant Lutador must not only show that the "5.00% of benefit liabilities" expense assumption is erroneous but it must also independently demonstrate that the noted $68,382.09 liability is unreasonable.

## V.  WHAT IS GENERALLY ACCEPTED AS "REASONABLE"?

13.  In the preceding discussion [in Sections 10.b. and 10.c. above] it is stated that "an actuarial assumption and methodology process that is used in [or is consistent with] the preparation of . . . (an) 'Actuarial Information' certification . . . would ordinarily be deemed reasonable by any knowledgeable reviewer". This statement is, of course, true but it should be put in context.

14.  "Reasonable" to a qualified reviewer or chooser of pension plan actuarial assumptions [which would normally be what ERISA calls an "Enrolled Actuary"] will usually mean that said assumptions fall within a bounded range. In the world of Enrolled Actuaries these boundaries are normally custom-and-practice defined [that is, to be what in professional parlance is called "Generally Acceptable"] to have a nowadays low liability limit of a plan's "Actuarial Information" assumptions and a high liability limit of the actuarial assumption basis used by the PBGC [the U.S. Government agency that insures private-sector pension plans] "to (as the PBGC's website says at http://www.pbgc.gov/practitioners/interest-rates/content/hr1008.html) value benefits . . under Multiemployer plans following mass withdrawal as discussed in 29 CFR 4281". This "General Acceptance" is evidenced by the presentations of many speakers on the topic of MEPPAA withdrawals at actuarial conventions.

15.  The noted PBGC valuation basis [which includes an investment return of 4.20% per annum during the 20 years following 1-1-2004 and a 5.00% per annum return thereafter] would, had it been adopted by the Pension Plan, produced a withdrawal liability at or about $100,000 and such a figure, in my opinion, would have been deemed reasonable by a preponderance of actuarial reviewers.

16.  The point to be remembered is that a reasonable value for the Lutador withdrawal liability

is a figure that most reviewers would say falls in the $68,382.09-$100,000.00 range. The Pension Plan, in my opinion, could have easily justified a withdrawal liability that was well above the $68,382.09 they actually assessed to Lutador but they would have had difficulty reasonably assessing a withdrawal liability lower than this $68,382.09.

## V.    CONCLUSION

17.    In summary, per the preceding explanation and analysis, the noted $68,382.09 liability was computed correctly. The Plaintiff Pension Plan's choice to determine the needed "expense liabilities" by assuming that it will equal 5.00% of the vested portion of the corresponding "benefit liabilities" [the only assumption being explicitly challenged by Defendant Lutador] was proper and, even if it were not so, the asserted-by-Plaintiff-Pension-Plan withdrawal liability would still, according to Generally Accepted Actuarial Practice, be deemed to be reasonable.

I declare under penalty of perjury, under the laws of the United States and the State of Massachusetts, that the foregoing is true and correct.

Executed this Twenty-ninth day of August, 2006  in Framingham, Massachusetts

_____/s/ Thomas P. Tierney._____
THOMAS P. TIERNEY, FSA, MAAA, EA



**TIERNEY ASSOCIATES, INC.**
ACTUARIES AND CONSULTANTS

7 LOMAS DRIVE
FRAMINGHAM, MA
01701-3950
------
TELEPHONE: (508)877-3700
FACSIMILE: (508)877-7578
e-mail: Tptactuary@aol.com

# CURRICULUM VITAE

## THOMAS P. TIERNEY, FSA, MAAA, EA
### CONSULTING ACTUARY

| | |
|---|---|
| Date of Birth | April 24, 1943 |
| Residence | Salem, Massachusetts [April 1943 - August 1966]<br>Newton, Massachusetts [August 1966 - June 1967]<br>Framingham, Massachusetts [June 1967 - Present] |
| Education | Boston College [B.S. - Physics], Class of 1964<br>Northeastern U. [M.S. - Actuarial Science], Class of 1968 |
| Military | U. S. Marine Corps:  Active duty    August 1964    > February 1965<br>Reserve duty   February 1965   > August 1970 |
| Professional<br>Credentials | Fellow, Society of Actuaries<br>Member, American Academy of Actuaries<br>Member, Boston Actuaries Club<br>Enrolled Actuary, U.S. Depts. of Labor and Treasury |

| Employment History | | | | |
|---|---|---|---|---|
| | John Hancock Life Ins. | various positions | Mar. 1965 | > July 1977 |
| | William M. Mercer, Inc. | Consulting Actuary | July 1977 | > Feb. 1979 |
| | Alexander & Alexander | Consulting Actuary | Feb. 1979 | > Feb. 1980 |
| | Tierney & Peters | Consulting Actuary | Sept. 1987 | > Jan. 1993 |
| | Tierney Associates, Inc. | Consulting Actuary | Feb. 1980 | > Present |

| | |
|---|---|
| Practice Areas | Employee benefits consulting [general practice excluding asset management]<br>Life insurance company consulting [general practice excluding asset |

management]
Valuation of contingent assets and liabilities

Publications
areas of

Approximately 40-50 articles, discussions and public opinions in the

pension plan forecasting , pension plan accounting, expert testimony,
Social Security, employee benefit valuation, insurance company
ownership and computer utilization

**PUBLICATIONS** [of T. P. Tierney on or after 1-1-1992 - - - Page 1 of 2]

| | |
|---|---|
| 1992-12-18 | Comment presented to the Actuarial Standards Board regarding their then-pending standard entitled "Selection of Economic Assumptions for Measuring Pension Obligations" |
| 1995-03-07 | Presentation at a Key West meeting of the American Academy of Matrimonial Lawyers entitled "Important Factors in Pension Valuation" |
| 1995-06-27 | Comment/testimony presented to the Massachusetts Insurance Department at their "State Mutual Demutualization" hearing |
| 1996-07-17 | Testimony presented to the Massachusetts Insurance Department at their "Metropolitan Life/New England Life Merger" hearing |
| 1996-10-04 | Letter to the editor [captioned "Insurance scam revisited"] published in The Boston Phoenix |
| 1997-06-04 | Comment/testimony presented to the Joint Committee on Insurance of the Massachusetts General Court [aka the Mass. legislature] regarding then-pending legislation concerning mutual life insurance holding companies |
| 1997-10-22 | Comment presented to the New York State Assembly Standing Committee on Insurance regarding then-pending legislation concerning mutual life insurance holding companies [subsequently published in the May 1998 issue of Small Talk] |
| 1998-01-20 | "Return of the Robber Barons?" - a commentary regarding life insurance company organizational structure that's avalaible at www.demutualization.org and that's been hard-copy published, under the title "Watch out for Mutual Holding Companies", in the May/June 1998 issue of Contingencies |
| 1998-09-01 | Comment presented to the Actuarial Standards Board regarding their then-pending standard entitled "Actuarial Responsibilities with Respect to Closed Blocks in Mutual Life Insurance Company Reorganizations" |
| 1998-10-21 | Presentation at a New York City meeting of the Society of Actuaries entitled "Update On Mutual Holding Companies" |
| 1998-12-09 | Presentation at a local meeting of the Boston Actuaries Club entitled "Analyzing QDROs" |
| 1999-04-01 | Comment presented to the Actuarial Standards Board regarding their then-pending standard entitled "Actuarial Practice Concerning Retirement Plan Benefits in Domestic Relations Actions" |

**PUBLICATIONS** [of T. P. Tierney on or after 1-1-1992 - - - Page 2 of 2]

| | |
|---|---|
| 1999-10-12 | Presentation at a Boca Raton meeting of the Conference of Consulting Actuaries entitled "Demutualization and Mutual Holding Companies" |
| 1999-12-18 | Comment presented to the Actuarial Standards Board regarding their then-pending standard entitled "Allocation of Policyholder Consideration in Mutual Life Insurance Company Demutualizations" |
| 2000-01-24 | Comment/testimony presented to the New York State Insurance Department at their "Metropolitan Life Demutualization" hearing |
| 2000-02-14 | Supplemental written comment presented to the New York State Insurance Department regarding the still-pending "Metropolitan Life Demutualization" |
| 2000-05-01 | Comment presented to the Actuarial Standards Board regarding their still-pending standard entitled "Allocation of Policyholder Consideration in Mutual Life Insurance Company Demutualizations" |
| 2001-07-17 | Comment/testimony presented to the New Jersey Insurance Department at their "Prudential Life Demutualization" hearing |
| 2001-08-15 | Comment presented to the Actuarial Standards Board regarding their then-pending standard entitled "Expert Testimony by Actuaries" |
| 2001-08-16 | Supplemental written comment presented to the New Jersey Insurance Department regarding the still-pending "Prudential Life Demutualization" |
| 2005-01-19 | Letter to the editor [re: Actuarial Standard of Practice No. 27] published in the April/May 2005 issue of <u>The Actuary</u> |
| 2005-09-30 | Comment presented to the Actuarial Standards Board regarding their then-pending standard entitled "Dividends for Individual Participating Life Insurance, Annuities, Disability Insurance, and Long Term Care Insurance" |

## TESTIMONY IN COURT [of T. P. Tiemey on or after 1-1-1998]

Estate of John Kulikowski
Massachusetts Superior Court (Suffolk)
Testified in Court on 6-23-1998

Moss v. Moss
Massachusetts Probate & Family Court (Concord)
Testified in Court on 5-3-1999

Petition of Beverly Russell
Massachusetts Probate & Family Court (Worcester)
Testified in Court on 11-3-2000

Susan Stone v. Peter M. Stone
Massachusetts Probate & Family Court (Worcester) Case No. 93 DR 0755 DV2
Testified in Court on 5-11-2001

Benkert v. Tkacik
Massachusetts Probate & Family Court (Cambridge) Case No. 01D 1400 DV1
Testified in Court on 4-30-2003

Halperson v. Halperson
Massachusetts Probate & Family Court (Cambridge) Case No. 03D0159DV1
Testified in Court on 5-24-2004

Terral v. Terral
Massachusetts Probate & Family Court (Concord)
Testified in Court on 7-7-2006

## DEPOSITIONS [of T. P. Tierney on or after 1-1-1998]

Samuel Jacobsen and Jerry P. Kayle v. Prudential Insurance, et al.
California Superior Court(Los Angeles) Docket No. BC179323
Deposed on 8-11-1998 [and continued on 8-12-1998]

Casey, et al. v. Prudential Insurance, et al.
California Superior Court(Monterey) Docket No. 110178
Deposed on 10-6-1998 [and continued on 11-16-1998]

Michele Morgan, et al. v. The Hartford Financial Services Group, Inc. et al.
California Superior Court(San Diego) Docket No. 715498
Deposed on 4-11-2000

Kevin Laurent, et al. v. The Franklin Life Insurance Company
Illinois Circuit Court [3rd Circuit - Madison County] Cause No. 99-L-300
Deposed on 12-1-2000

William D. Martindale, et al. v. Southwestern Life Insurance Company, et al.
U.S. Dist. Court for the Eastern Dist. of Texas [Beaumont Div.] Cause No. 1:00-CV-687
Deposed on 3-12-2002

Ross T. Goldberg, et al. v. Conseco Life Insurance Company, et al.
California Superior Court(Los Angeles) Docket Nos. BC234413 and BC248752
Deposed on 5-29-2002

Walter Klein and Sharyn M. Klein v. No. Am. Co. for Life and Health Insurance
California Superior Court(Los Angeles) Docket No. BC257856
Deposed on 8-3-2004



# NEW BEDFORD FISHERMEN'S PENSION FUND

## ACTUARIAL VALUATION
### January 1, 2004

Fiscal Year (January 1, 2004 to December 31, 2004)

**BASIL CASTROVINCI ASSOCIATES INC.**

3235 KENNEDY BOULEVARD
JERSEY CITY, NEW JERSEY
(201) 963-9600

May 27, 2004

Board of Trustees
New Bedford Fishermen's Pension Fund
56 North Water Street
New Bedford, MA 02740

Re: Actuarial Valuation
January 1, 2004

Gentlemen:

We have completed the actuarial valuation of the Pension Fund as of January 1, 2004 for the year ending December 31, 2004. All calculations were made in our office under the supervision of enrolled actuaries.

The members' data was supplied to us by the Fund office. The financial records are based on a draft of the Auditor's report for the fiscal year ending December 31, 2004.

The results of the actuarial valuation are contained in the attached exhibits. The first two Exhibits, (A & B) derive the minimum funding requirements of The Employee Retirement Income Security Act of 1974 (ERISA). These Exhibits derive the Normal Cost and show the administrative expense.

**Exhibit A** sets forth the Actuarial Balance Sheet which indicates that the total projected liabilities of the Fund are $25,842,776. These liabilities represent the value as of the valuation date January 1, 2004 of all the future obligations of the pension fund provided the actuarial assumptions are realized. The Market Value of the assets is $24,387,749. However, the assets contain a Credit Balance of $1,698,592; the difference $22,689,157 when subtracted from the total liabilities of $25,842,776 represents the present value as of January 1, 2004 of required future contributions, $3,153,619, to cover all the obligations of the pension fund.

**Exhibit B** shows the Funding Standard Account (FSA). This shows the actuarial charges as required by ERISA. This is comprised of the Normal Cost $416,782, the estimated expense of $123,000, and interest on those items of $17,543. Therefore the valuation indicates that the total charge under the Minimum Funding Standard as set forth in ERISA, for the plan year commencing January 1, 2004 through December 31, 2004 is $557,325. The FSA also reflects the credits. The Credits are the Employers' contributions plus last year's Credit Balance, interest on those two items, and the Full Funding Credit, if any.

Exhibit C sets forth the calculation of "Accrued Liabilities" as of the valuation date, using the valuation interest assumption of 6.50% and using the 1983 GAM valuation mortality table. It also sets forth the "funding percentages."

Exhibit D sets forth the calculation of "Current Liabilities" and also shows the "Percent Funded" when using the IRS prescribed interest assumption and mortality table. Legislation requires that the Fund's actuary also calculate the "Current Liabilities" at an interest rate that falls within a prescribed corridor. The interest rate corridor prescribed by the Internal Revenue Service for a fiscal year commencing January 1, 2004 is a minimum of 5.89% percent and a maximum of 6.55% percent. This corridor cannot be less than 90% nor more than 100% of a weighted average of the yield on investment grade long-term corporate bonds for the last four years. The weighted average yield on investment grade long-term corporate bonds over the last four years is 6.55%. The calculations were performed at 6.55%.

Exhibit E indicates the approximate investment return of the Market Value of the Fund for the last several years. It also shows the income and disbursements to the Trust over that period. The second page of Exhibit E shows an estimate of what the Plan's assets would have been as of December 31, 2003 had they earned the Plan's assumed interest of 6.50% since January 1, 1999.

Exhibit F displays the calculation of the Full Funding Limit under the Entry Age Normal method. Exhibit G displays the Full Funding Limit using RPA '94. Exhibit H displays the total for the Full Funding Limit.

Exhibit I displays the change in accrued benefits from January 1, 2003 to January 1, 2004.

The plan's benefits for the purpose of our valuation are described in Exhibit J. The results of our actuarial calculations are based on our actuarial assumptions and methods that are contained in Exhibit K.

We have also included an age and service scatter and age and service distributions of the active members, and the age distribution of the pensioners

We will be pleased to discuss this report with you at your convenience.


Basil Castrovinci Associates Inc.

**EXHIBIT A**

New Bedford Fishermen's Pension Fund

**ACTUARIAL BALANCE SHEET**
**(Aggregate Funding Method)**

Valuation Date    01/01/04
Interest Rate     6.50%

| ASSETS | | Amount |
|---|---|---|
| (1) Net Worth of Fund | | $24,387,749 |
| (2) Credit Balance | | $1,698,592 |
| (3) Value of Future Normal Cost | (4)-(1)+(2) | $3,153,619 |
| | Total | $25,842,776 |

| LIABILITIES | | | Number of Members |
|---|---|---|---|
| Present Value of Benefits Active Members | | $4,034,672 | 118 |
| Ancillary Benefits | | $234,702 | |
| Terminated Members | | $3,003,102 | 105 |
| Retired Members | | $18,570,300 | 543 |
| (4) | Total | $25,842,776 | 766 |

**EXHIBIT B**

**New Bedford Fishermen's Pension Fund**
**MINIMUM FUNDING REQUIREMENT**
(Aggregate Funding Method)

|  |  |
|---|---|
| Valuation Date | 01/01/04 |
| Interest Rate | 6.50% |

| | |
|---|---|
| (1) Future Normal Costs | $3,153,619 |
| (2) Average Temporary Annuity | 7.5666 |
| (3) Normal Cost<br>(1)/(2) | $416,782 |
| (4) Expenses<br>(Estimated) | $123,000 |
| (5) Funding Requirement | $539,782 |

## SCHEDULE B INFORMATION

**CHARGES**

| | |
|---|---|
| **(6) Funding Charge plus Interest** | **$557,325** |

**CREDITS**

| | |
|---|---|
| (7) Last Year's Credit Balance | $1,698,592 |
| (8) Employer Contributions | $251,089 |
| (9) Interest | $118,569 |
| (10) Full Funding Credit | $0 |
| **(11) Total Credits**<br>(7)+(8)+(9)+(10) | **$2,068,250** |
| (12) Credit Balance or (Deficit)<br>(11) minus (6) | $1,510,925 |

**EXHIBIT C**

### New Bedford Fishermen's Pension Fund
### LIABILITY OF ACCRUED BENEFITS

Valuation Date    01/01/04
Interest Rate    6.50%
Mortality    1983 GAM

| | Amount | Number of Members |
|---|---|---|
| **(1) Present Value of Vested Benefits** | | |
| Pensioners | $18,570,300 | 543 |
| Terminated Vesteds | $3,003,102 | 105 |
| Active Vested | $2,662,091 | 91 |
| **Total Vested Liabilities** | $24,235,493 | 739 |
| **(2) Present Value of Non-Vested Benefits** | | |
| Active | $92,973 | 27 |
| **Total Non Vested Liabilities** | $92,973 | 27 |
| **(3) Total Liabilities of Accrued Benefits** (1) + (2) | $24,328,466 | 766 |
| **(4) Market Value of Assets** | $24,387,749 | |
| (5) Percent Vested Benefits Funded (4)/(1) | 100.63% | 739 |
| (6) Percent Of Accrued Benefits Funded (4)/(3) | 100.24% | 766 |

**EXHIBIT D**

**New Bedford Fishermen's Pension Fund**
LIABILITY OF ACCRUED BENEFITS

| | Valuation Date | 01/01/04 |
|---|---|---|
| | Interest Rate | 6.55% |
| | Mortality | 1983 GAM |

| | Amount | Number of Members |
|---|---|---|
| **(1) Present Value of Vested Benefits** | | |
| Pensioners | $18,510,146 | 543 |
| Terminated Vesteds | $2,984,961 | 105 |
| Active Vested | $2,642,128 | 91 |
| **Total Vested Liabilities** | **$24,137,235** | **739** |
| **(2) Present Value of Non-Vested Benefits** | | |
| Active | $91,942 | 27 |
| **Total Non Vested Liabilities** | **$91,942** | **27** |
| **(3) Total Liabilities of Accrued Benefits** | **$24,229,177** | **766** |
| (1) + (2) | | |
| **(4) Market Value of Assets** | **$24,387,749** | |
| **(5) Percent Vested Benefits Funded** | 101.04% | 739 |
| (4)/(1) | | |
| **(6) Percent Of Accrued Benefits Funded** | 100.65% | 766 |
| (4)/(3) | | |

EXHIBIT E

## New Bedford Fishermen's Pension Plan

### Performance of Assets

| | 01/01/97 | 01/01/98 | 01/01/99 | 01/01/00 | 01/01/01 | 01/01/02 | 01/01/03 |
|---|---|---|---|---|---|---|---|
| Assets at beginning of Fiscal Year | $26,146,074 | $28,373,404 | $29,537,006 | $28,017,705 | $28,271,247 | $27,008,967 | $22,238,114 |
| Contributions | 433,436 | 345,257 | 252,881 | 84,139 | 222,398 | 266,303 | 251,089 |
| Investment Income | 3,745,147 | 2,842,390 | 611,714 | 2,853,753 | 865,024 | (2,725,847) | 4,262,748 |
| Total | 4,178,583 | 3,187,647 | 864,595 | 2,937,892 | 1,087,422 | (2,459,544) | 4,513,837 |
| Pension Payments | 1,831,460 | 1,903,401 | 2,265,424 | 2,556,548 | 2,216,637 | 2,186,781 | 2,241,394 |
| Administrative Office | 119,793 | 120,644 | 118,472 | 127,802 | 133,065 | 124,528 | 122,808 |
| Total | 1,951,253 | 2,024,045 | 2,383,896 | 2,684,350 | 2,349,702 | 2,311,309 | 2,364,202 |
| Net Change | 2,227,330 | 1,163,602 | (1,519,301) | 253,542 | (1,262,280) | (4,770,853) | 2,149,635 |
| Assets at End of Fiscal Year | $28,373,404 12/31/97 | $29,537,006 12/31/98 | $28,017,705 12/31/99 | $28,271,247 12/31/00 | $27,008,967 12/31/01 | $22,238,114 12/31/02 | $24,387,749 12/31/03 |
| Estimated Return | 14.75% | 10.32% | 2.15% | 10.68% | 3.18% | -10.49% | 20.12% |

| | | |
|---|---|---|
| Last 2 Years | 3.69% | Last 5 Years 4.64% |
| Last 3 Years | 3.52% | Last 6 Years 5.56% |
| Last 4 Years | 5.27% | Last 7 Years 6.83% |

BASIL CASTROVINCI ASSOCIATES INC.
*Page [7]*

EXHIBIT E
(Cont.)

## New Bedford Fishermen's Pension Plan

### Expected Performance of Assets
### 6.50% Assumed Return Since January 1, 1999

|  | 01/01/1999 | 01/01/2000 | 01/01/2001 | 01/01/2002 | 01/01/2003 |
|---|---|---|---|---|---|
| Assets at beginning of Fiscal Year | 29,537,006 | 29,256,638 | 28,473,602 | 28,127,945 | 27,844,793 |
| Investment Income | 1,850,647 | 1,817,175 | 1,781,647 | 1,761,854 | 1,741,235 |
| Employer Contributions | 252,881 | 84,139 | 222,398 | 266,303 | 251,089 |
| Total | 2,103,528 | 1,901,314 | 2,004,045 | 2,028,157 | 1,992,324 |
| Pension Payments | 2,265,424 | 2,556,548 | 2,216,637 | 2,186,781 | 2,241,394 |
| Administrative Office | 118,472 | 127,802 | 133,065 | 124,528 | 122,808 |
| Total | 2,383,896 | 2,684,350 | 2,349,702 | 2,311,309 | 2,364,202 |
| Net Change | (280,368) | (783,036) | (345,657) | (283,152) | (371,878) |
| Assets at End of Fiscal Year | $29,256,638 12/31/1999 | $28,473,602 12/31/2000 | $28,127,945 12/31/2001 | $27,844,793 12/31/2002 | $27,472,915 12/31/2003 |
| Actual Assets | $28,017,705 | $28,271,247 | $27,008,967 | $22,238,114 | $24,387,749 |
| Difference | ($1,238,933) | ($202,355) | ($1,118,978) | ($5,606,679) | ($3,085,166) |

**EXHIBIT F**

### New Bedford Fishermen's Pension Fund
### Calculation of the Maximum Full Funding Limit
### Under Entry Age Normal

Interest          6.50%

| | | |
|---|---|---|
| (a) Entry Age Normal Cost | | $148,502 |
| (b) Expenses | | $123,000 |
| (c) Normal Cost | (a) + (b) | $271,502 |
| (d) Average Temporary Annuity | | 7.56660 |
| (e) Pres. Value of Future Benefits | | $25,842,776 |
| (f) Entr Age Norm. Accr. Liability | (e)-((a)*(d)) | $24,719,121 |
| (g) Market Value Of Assets | | $24,387,749 |
| (h) Full Funding Limit (Year End) | (f)*(1+I) + (c)*(1+I)^(1/2) - (1+I)*[ (g)] | $633,098 |
| (i) Full Funding Limitation | (h) Not less than 0 | $633,098 |
| Employers' Contribution | (Auditor's Report) | $251,089 |

I=Interest Rate

Funding Rate 6.50%

**EXHIBIT G**

### New Bedford Fishermen's Pension Fund
### Calculation of the Maximum Full Funding Limit
### Under RPA 94

| | Interest | 6.55% | |
|---|---|---|---|

**(1)**

| | | | |
|---|---|---|---|
| (a) Current Liability | | | $24,229,177 |
| (b) Current Liability Normal Cost | | | $222,282 |
| (c) Total  (plus Interest) | ((a)+(b))*1.0655 | | $26,053,030 |
| (d) Benefit Payments | | | $2,241,394 |
| **(e) Total Part 1** | (c)-(d)*1.03275 | | **$23,738,230** |

**(2)**

| | | | |
|---|---|---|---|
| (f) Actuarial Value of Assets | | | $24,387,749 |
| (g) Assets plus Interest | (f)*1.065 | | $25,972,953 |
| (h) Benefit Payments | | | $2,241,394 |
| **(i) Total Part 2** | (f)*1.065-(h)*1.0325 | | **$23,658,713** |
| **(j) Limit on Full Funding Limit  (90%*(e))-(i),NOT <0** | | | **$0** |
| **(k) Unfunded Current Liability  (e)-(i), NOT<0** | | | **$79,517** |

Current Liability Permissible Ranges
RPA '94  90-100% of a weighted average of investment grade long-term corporate bonds
    over the last four years:  6.55%
Interest: Minimum 5.89%  Maximum 6.55%

**EXHIBIT H**

**New Bedford Fishermen's Pension Fund**
**Total Minimum Full Funding**

1) ERISA Full Funding                                  $2,442,098

2) RPA '94 Full Funding                                      $0

**3) TOTAL FULL FUNDING      greater of 1 and 2          $2,442,098**

**New Bedford Fishermen's Pension Fund**
**Total Maximum Full Funding**

1) ERISA Full Funding        (Exhibit F)               $633,098

2) RPA '94 Full Funding      (Exhibit G)                    $0

**3) TOTAL FULL FUNDING     greater of 1 and 2          $633,098**

4) Unfunded Current Liability   (Exhibit G)             $79,517

5) Normal Cost plus interest    (Exhibit B)            $557,325

**6) Maximum Contribution                              $557,325**

**EXHIBIT I**

### New Bedford Fishermen's Pension Fund
### Accumulated Plan Benefits
### as of January 1, 2004 and January 1, 2003

|  | January 1 | |
| --- | --- | --- |
|  | 2004 | 2003 |
| Vested Benefits: | | |
| Participants Currently Receiving Payments | $18,570,300 | $18,674,093 |
| Other Participants (Active & Terminated) | 5,665,193 | 5,911,985 |
| Total Vested Benefits | 24,235,493 | 24,586,078 |
| Non-Vested Benefits | 92,973 | 56,174 |
| Total Present Value of Accumulated Plan Benefits | $24,328,466 | $24,642,252 |

Detail of the Change in Accumulated Benefits from January 1, 2003 to January 1, 2004

| | |
| --- | --- |
| Present Value of Accumulated Plan Benefits at January 1, 2003: | $24,642,252 |
| Plus benefits accumulated, gains/losses, data changes: | 325,862 |
| Less benefits paid during the year: | (2,241,394) |
| Changes in actuarial assumptions: | 0 |
| Plan changes: | 0 |
| Interest on 1/1/2003 Present Value at 6.50%: | 1,601,746 |
| Net Decrease: | (313,786) |
| Present Value of Accumulated Plan Benefits at January 1, 2004: | $24,328,466 |

EXHIBIT J

**New Bedford Fishermen's Pension Plan**
**SUMMARY OF PLAN PROVISIONS**

**Credited Service & Vesting Service**

| Number of Fishing Days | Years of Vesting & Credited Service |
|---|---|
| 85 through 87 | .50 |
| 88 | .704 |
| 89 to 124 | Pro-rated (carried 3 decimal places) .008 per day |
| 125 or more | 1.0 |

**Normal Retirement**

Eligibility — Age 60 with 5 years of Vesting Service, or age 65 and 5th anniversary of Plan participation, not later than April 1st following year employee attains 70½

Monthly Benefit — $25.00 monthly per year of credited service not to exceed 30 years of service

**Deferred Vested Retirement**

Eligibility — Break in Service after 5 years of Vesting Service

Monthly Benefit — Benefit in effect at the time of termination equal to the accrued Normal Retirement Benefit payable at age 60

**Disability Retirement**

Eligibility — Completion of 10 years of Vesting Service and one day of employment in the 12-month period preceding disability

Monthly Benefit — Benefit in effect at the time of disability equal to the accrued Normal Retirement Benefit payable immediately

**Pre-Retirement Death**

A. Eligibility — Attainment of Vesting status

Monthly Benefit — 50% Continuance to spouse commencing on employee's Normal Retirement Date, plus

B. Eligibility — 10 Years of Vesting Service and 125 fishing days in the 12-month period preceding the date of death

Benefit — Lump sum amount payable to beneficiary as follows:

| Years of Vesting Service | Amount of Benefit |
|---|---|
| 10 - 14 | $10,000 |
| 15 – 19 | $15,000 |
| 20 or more | $20,000 |

**Post-Retirement Death**

Eligibility — Payable in the event that the Death benefit payable from the New Bedford Welfare Plan is less than $7,500

Benefit — $7,500

**Vesting** — 100% after 5 years of Vesting Service

**Spouse's Benefit** — A 50% Q.J.S.A., actuarial equivalent of Life annuity

EXHIBIT K

### New Bedford Fishermen's Pension Plan

## ACTUARIAL ASSUMPTIONS

| | | |
|---|---|---|
| 1. Actuarial Cost Method | | *Aggregate Funding Method* |
| 2. Asset Valuation Method | | *Market Value.* |
| 3. Interest | | *6.50% for Funding Standard account*<br>*6.55% for Current Liability* |
| 4. Retirement Age | | 60 |
| 5. Mortality | | GAM 83 |
| 6. Withdrawal | | None |
| 7. Disability: | | None |
| 8. Expenses (estimated) | | $123,000 |
| 9. Incomplete data | | *Age and service characteristics of the "unknown" data were*<br>*assumed to be similar to the known data.* |

### New Bedford Fishermen's Pension Plan

### AGE AND SERVICE SCATTER

01/01/2004

| AGE | SERVICE | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 0 to 4 | 5 to 9 | 10 to 14 | 15 to 19 | 20 to 24 | 25 to 29 | 30 to 34 | 35 to 39 | 40+ | TOTAL |
| 15-19 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 20-24 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 25-29 | 4 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 6 |
| 30-34 | 1 | 5 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 7 |
| 35-39 | 1 | 3 | 5 | 1 | 0 | 0 | 0 | 0 | 0 | 10 |
| 40-44 | 2 | 1 | 3 | 2 | 1 | 0 | 0 | 0 | 0 | 9 |
| 45-49 | 8 | 3 | 5 | 5 | 1 | 1 | 0 | 0 | 0 | 23 |
| 50-54 | 2 | 1 | 10 | 5 | 7 | 1 | 0 | 0 | 0 | 26 |
| 55-59 | 2 | 3 | 7 | 5 | 9 | 3 | 0 | 0 | 0 | 29 |
| 60-64 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 65 AND UP | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| UNKNOWN | 7 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 8 |
| TOTAL | 27 | 19 | 31 | 18 | 18 | 5 | 0 | 0 | 0 | 118 |



New Bedford Fishermen's Pension Plan

### Age Distribution as of 01/01/2004

| Total Number of Active Participants | 118 |
|---|---|
| Inconsistent Date of Birth | 8 |
| Total Actives Charted | 110 |
| | |
| Average Age | 48.0 |
| Average Service | 12.3 |

New Bedford Fishermen's Pension Plan



| Total Number of Active Participants | 118 |
|---|---|
| Inconsistent Date of Hire | 0 |
| Total Actives Charted | 118 |
| | |
| Average Age | 48.0 |
| Average Service | 12.3 |



New Bedford Fishermen's Pension Plan



### RETIRED PARTICIPANTS

| Age | 50 | 51 | 53 | 54 | 55 | 56 | 58 | 59 | 60 | 61 | 63 | 64 | 65 | 66 | 68 | 69 | 70 | 71 | 73 | 74 | 75 | 76 | 78 | 79 | 80 | 81 | 83 | 84 | 85 | 86 | 88 | 89 | 90 | 91 | 93 | 94 |
|-----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|
| NUMBER | 3 | 1 | 0 | 4 | 2 | 0 | 3 | 2 | 15 | 23 | 25 | 20 | 33 | 30 | 27 | 29 | 17 | 18 | 18 | 14 | 17 | 26 | 16 | 18 | 13 | 14 | 12 | 8 | 9 | 4 | 3 | 6 | 4 | 3 | 3 | 0 |



**SCHEDULE B**
**(Form 5500)**

Department of the Treasury
Internal Revenue Service

Department of Labor
Employee Benefits Security
Administration

Pension Benefit Guaranty Corporation

# Actuarial Information

This schedule is required to be filed under section 104 of the Employee
Retirement Income Security Act of 1974, referred to as ERISA, except when
attached to Form 5500-EZ and, in all cases, under section 6059(a) of the
Internal Revenue Code, referred to as the Code.

▶ **Attach to Form 5500 or 5500-EZ if applicable.**

▶ **See separate instructions.**

Official Use Only

OMB No. 1210-0110

## 2004

**This Form is Open to Public
Inspection (except when
attached to Form 5500-EZ).**

For calendar plan year 2004 or fiscal plan year beginning ___/___/___ , and ending ___/___/___

▶ **Round off amounts to nearest dollar.**

▶ **Caution: A penalty of $1,000 will be assessed for late filing of this report unless reasonable cause is established.**

| A Name of plan | B Three-digit |
|---|---|
| NEW BEDFORD FISHERMEN'S PENSION FUND | plan number ▶ 001 |

| C Plan sponsor's name as shown on line 2a of Form 5500 or 5500-EZ | D Employer Identification Number |
|---|---|
| NEW BEDFORD FISHERMEN'S PENSION FUND | 22-3122225 |

| E Type of plan: (1) ☒ Multiemployer (2) ☐ Single-employer (3) ☐ Multiple-employer | F ☐ 100 or fewer participants in prior plan year |
|---|---|

**Part I  Basic Information (To be completed by all plans)**

1a Enter the actuarial valuation date:    Month **01**    Day **01**    Year **04**

b Assets:

| | | | |
|---|---|---|---|
| (1) Current value of assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | b(1) | 24387749 |
| (2) Actuarial value of assets for funding standard account . . . . . . . . . . . . . . . . | b(2) | 24387749 |

c (1) Accrued liability for plans using immediate gain methods . . . . . . . . . . . . . . . . | c(1) | |

(2) Information for plans using spread gain methods:

| | | |
|---|---|---|
| (a) Unfunded liability for methods with bases . . . . . . . . . . . . . . . . . . . . | c(2)(a) | |
| (b) Accrued liability under entry age normal method . . . . . . . . . . . . . . . . . | c(2)(b) | 24719121 |
| (c) Normal cost under entry age normal method . . . . . . . . . . . . . . . . . . | c(2)(c) | 287155 |

**Statement by Enrolled Actuary (see instructions before signing):**

To the best of my knowledge, the information supplied in this schedule and on the accompanying schedules, statements, and attachments, if any, is complete and accurate, and in my opinion each assumption, used in combination, represents my best estimate of anticipated experience under the plan. Furthermore, in the case of a plan other than a multiemployer plan, each assumption used (a) is reasonable (taking into account the experience of the plan and reasonable expectations) or (b) would, in the aggregate, result in a total contribution equivalent to that which would be determined if each such assumption were reasonable; in the case of a multiemployer plan, the assumptions used, in the aggregate, are reasonable (taking into account the experience of the plan and reasonable expectations).

| SIGN HERE | | |
|---|---|---|
| *[signature]* | | 7/15/05 |
| Signature of actuary | | Date |
| BASIL CASTROVINCI | | G 05-0734 |
| Type or print name of actuary | | Most recent enrollment number |
| BASIL CASTROVINCI ASSOCIATES, INC. | | 201-963-9600 |
| Firm's name | | Telephone number (including area code) |
| 3235 KENNEDY BOULEVARD | | |
| JERSEY CITY                      NJ      07306 | | |
| Address of the firm | | |

If the actuary has not fully reflected any regulation or ruling promulgated under the statute in completing this schedule, check the box and see instructions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐

For Paperwork Reduction Act Notice and OMB Control Numbers, see the Instructions for Form 5500 or 5500-EZ.         v7.2         Schedule B (Form 5500) 2004

08042 5010 K

4W94BH 4.000

Schedule B (Form 5500) 2004            **Page 2**

Official Use Only

| | | | |
|---|---|---|---|
| **1d** | Information on current liabilities of the plan: | | |
| (1) | Amount excluded from current liability attributable to pre-participation service (see instructions) | **d(1)** | 0 |
| (2) | "RPA '94" information: | | |
| (a) | Current liability | **d(2)(a)** | 24229177 |
| (b) | Expected increase in current liability due to benefits accruing during the plan year | **d(2)(b)** | 222282 |
| (c) | Current liability computed at highest allowable interest rate (see instructions) | **d(2)(c)** | 24229177 |
| (d) | Expected release from "RPA '94" current liability for the plan year | **d(2)(d)** | 0 |
| (3) | Expected plan disbursements for the plan year | **d(3)** | 2300000 |

| | | | |
|---|---|---|---|
| **2** | Operational information as of beginning of this plan year: | | |
| **a** | Current value of the assets (see instructions) | **2a** | 24387749 |

| **b** | "RPA '94" current liability: | (1) No. of Persons | (2) Vested Benefits | (3) Total Benefits |
|---|---|---|---|---|
| (1) | For retired participants and beneficiaries receiving payments | 543 | 18510146 | 18510146 |
| (2) | For terminated vested participants | 105 | 2984961 | 2984961 |
| (3) | For active participants | 118 | 2642128 | 2734070 |
| (4) | Total | 766 | 24137235 | 24229177 |

| **c** | If the percentage resulting from dividing line 2a by line 2b(4), column (3), is less than 70%, enter such percentage | **2c** | % |
|---|---|---|---|

**3**   Contributions made to the plan for the plan year by employer(s) and employees:

| (a) Mo.-Day-Year | (b) Amount paid by employer | (c) Amount paid by employees | (a) Mo.-Day-Year | (b) Amount paid by employer | (c) Amount paid by employees |
|---|---|---|---|---|---|
| | 326692 | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | 3 Totals ▶ (b) | 326692 | (c) |

| | | | |
|---|---|---|---|
| **4** | Quarterly contributions and liquidity shortfall(s): | | |
| **a** | Plans other than multiemployer plans, enter funded current liability percentage for preceding year (see instructions) | **4a** | % |
| **b** | If line 4a is less than 100%, see instructions, and complete the following table as applicable: | | |

| Liquidity shortfall as of end of Quarter of this plan year | | | |
|---|---|---|---|
| **(1)** 1st | **(2)** 2nd | **(3)** 3rd | **(4)** 4th |
| | | | |



0 8 0 4 2 5 0 2 0 L

4W94BI 2.000

Schedule B (Form 5500) 2004                                          Page 3

Official Use Only

**5** Actuarial cost method used as the basis for this plan year's funding standard account computation:

| | | | | |
|---|---|---|---|---|
| **a** ☐ Attained age normal | **b** ☐ Entry age normal | | **c** ☐ Accrued benefit (unit credit) | |
| **d** ☒ Aggregate | **e** ☐ Frozen initial liability | | **f** ☐ Individual level premium | |
| **g** ☐ Individual aggregate | **h** ☐ Other (specify) ▶ | | | |

**I** Has a change been made in funding method for this plan year? . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes  ☒ No

**j** If line i is "Yes," was the change made pursuant to Revenue Procedure 2000-40? . . . . . . . . . . . . . . . . . ☐ Yes  ☐ No

**k** If line i is "Yes," and line j is "No" enter the date of the ruling letter (individual or
class) approving the change in funding method . . . . . . . . . . . . . . . . . . . Month        Day        Year

**6** Checklist of certain actuarial assumptions:

**a** Interest rate for "RPA '94" current liability . . . . . . . . . . . . . . . . . . . . . **6b**        6.55 %   ☐ N/A

**b** Weighted average retirement age . . . . . . . . . . . . . . . . . . . . . . . . . . **6b**         60      ☐ N/A

| | Pre-retirement | | Post-retirement | | |
|---|---|---|---|---|---|
| **c** Rates specified in insurance or annuity contracts . . . . ☐ N/A | **6c** Yes | ☒ No | Yes | ☒ No | ☐ N/A |
| **d** Mortality table code for valuation purposes: | | | | | |
| (1) Males . . . . . . . . . . . . . . . . . . . . . . . . | **d(1)** 7 | | 7 | | |
| (2) Females . . . . . . . . . . . . . . . . . . . . . . . | **d(2)** 7F | | 7F | | |
| **e** Valuation liability interest rate . . . . . . . . . . ☐ N/A | **6e** 6.50 | % | 6.50 | % | ☐ N/A |
| **f** Expense loading . . . . . . . . . . . . . . . . ☐ N/A | **6f** 25.1 | % | | % | ☒ N/A |

| | Male | | Female | | |
|---|---|---|---|---|---|
| **g** Annual withdrawal rates: | Rate Code | | Rate Code | | |
| (1) Age 25 . . . . . . . . . . . . . . . . . . . . . | **g(1)** U | 0.00 % | U | 0.00 % | |
| (2) Age 40 . . . . . . . . . . . . . . . . . . . . . | **g(2)** U | 0.00 % | U | 0.00 % | |
| (3) Age 55 . . . . . . . . . . . . . . . . . . . . . | **g(3)** U | 0.00 % | U | 0.00 % | |
| **h** Salary scale . . . . . . . . . . . . . . . ☒ N/A | **6h** | % | | % | ☒ N/A |

**i** Estimated investment return on actuarial value of assets for the year ending on
the valuation date . . . . . . . . . . . . . . . . . . . . . . . . . **6I**        20.1 %

**7** New amortization bases established in the current plan year:

| (1) Type of Base | (2) Initial Balance | (3) Amortization Charge/Credit |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

**8** Miscellaneous information:

**a** If a waiver of a funding deficiency or an extension of an amortization period has been approved for this plan year, enter the
date of the ruling letter granting the approval . . . . . . . . . . . . . . . . . . . . . Month        Day        Year

0804250030M

4W94BJ 4.000

Schedule B (Form 5500) 2004            **Page 4**

Official Use Only

**8b** If one or more alternative methods or rules (as listed in the instructions) were used for this plan year, enter the appropriate code in accordance with the instructions ▶ _____

**c** Is the plan required to provide a Schedule of Active Participant Data? (see instructions) If "Yes," attach schedule . . . . . . ☐ Yes ☒ No

**9 Funding standard account statement for this plan year:**

**Charges to funding standard account:**

| | | |
|---|---|---|
| **a** Prior year funding deficiency, if any | 9a | 0 |
| **b** Employer's normal cost for plan year as of valuation date | 9b | 553252 |
| **c** Amortization charges as of valuation date: | Outstanding Balance | |
| (1) All bases except funding waivers ▶ ($ 0 ) | c(1) | 0 |
| (2) Funding waivers ▶ ($ 0 ) | c(2) | 0 |
| **d** Interest as applicable on lines 9a, 9b, and 9c | 9d | 17981 |
| **e** Additional interest charge due to late quarterly contributions, if applicable | 9e | 0 |
| **f** Adjusted additional funding charge from Part II, line 12q, if applicable ☐ N/A | 9f | 0 |
| **g** Total charges. Add lines 9a through 9f | 9g | 571233 |

**Credits to funding standard account:**

| | | |
|---|---|---|
| **h** Prior year credit balance, if any | 9h | 1682078 |
| **i** Employer contributions. Total from column (b) of line 3 | 9i | 326692 |
| **j** Amortization credits as of valuation date ▶ ($ 0 ) Outstanding Balance | 9j | 0 |
| **k** Interest as applicable to end of plan year on lines 9h, 9i, and 9j | 9k | 119953 |
| **l** Full funding limitation (FFL) and credits | | |
| (1) ERISA FFL (accrued liability FFL) l(1) 2442098 | | |
| (2) "RPA '94" override (90% current liability FFL) l(2) 0 | | |
| (3) FFL credit | l(3) | 0 |
| **m** (1) Waived funding deficiency | m(1) | 0 |
| (2) Other credits | m(2) | 0 |
| **n** Total credits. Add lines 9h through 9k, 9l(3), 9m(1), and 9m(2) | 9n | 2128723 |
| **o** Credit balance: If line 9n is greater than line 9g, enter the difference | 9o | 1557490 |
| **p** Funding deficiency: If line 9g is greater than line 9n, enter the difference | 9p | 0 |

**Reconciliation account:**

| | | |
|---|---|---|
| **q** Current year's accumulated reconciliation account: | | |
| (1) Due to additional funding charges as of the beginning of the plan year q(1) 0 | | |
| (2) Due to additional interest charges as of the beginning of the plan year q(2) 0 | | |
| (3) Due to waived funding deficiencies: | | |
| (a) Reconciliation outstanding balance as of valuation date q(3)(a) 0 | | |
| (b) Reconciliation amount. Line 9c(2) balance minus line 9q(3)(a) q(3)(b) | | |
| (4) Total as of valuation date ▶ | q(4) | 0 |
| **10** Contribution necessary to avoid an accumulated funding deficiency. Enter the amount in line 9p or the amount required under the alternative funding standard account if applicable | 10 | 0 |
| **11** Has a change been made in the actuarial assumptions for the current plan year? If "Yes," see instructions | 11 | ☐ Yes ☒ No |

0 8 0 4 2 5 0 4 0 N

4W94BK 4.000

Schedule B (Form 5500) 2004              **Page 5**

Official Use Only

| **Part II** | **Additional Information for Certain Plans Other Than Multiemployer Plans** |

**Please see Who Must File in the Schedule B instructions to determine if you must complete Part II.**

**12**   Additional required funding charge (see instructions):

**a**   Enter "Gateway %." Divide line 1b(2) by line 1d(2)(c) and multiply by 100.

If line 12a is at least 90%, go to line 12q and enter -0-.

If line 12a is less than 80%, go to line 12b.

If line 12a is at least 80% (but less than 90%), see instructions and, if applicable, go to line 12q

and enter -0-. Otherwise, go to line 12b . . . . . . . . . . . . . . . . . . . . . . . . **12a**    %

**b**   "RPA '94" current liability. Enter line 1d(2)(a) . . . . . . . . . . . . . . . . . . . . . . . . **12b**

**c**   Adjusted value of assets (see instructions) . . . . . . . . . . . . . . . . . . . . . . . . **12c**

**d**   Funded current liability percentage. Divide line 12c by 12b and multiply by 100 . . . . . . . . . . . . . . . **12d**    %

**e**   Unfunded current liability. Subtract line 12c from line 12b . . . . . . . . . . . . . . . . . . **12e**

**f**   Liability attributable to any unpredictable contingent event benefit . . . . . . . . . . . . . . . . . . **12f**

**g**   Outstanding balance of unfunded old liability . . . . . . . . . . . . . . . . . . . . . . . . **12g**

**h**   Unfunded new liability. Subtract the total of lines 12f and 12g from line 12e. Enter -0- if negative . . . . . . . . **12h**

**i**   Unfunded new liability amount ( _____ % of line 12h) . . . . . . . . . . . . . . . **12i**

**j**   Unfunded old liability amount . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12j**

**k**   Deficit reduction contribution. Add lines 12i, 12j, and 1d(2)(b) . . . . . . . . . . . . . . . . . . **12k**

**l**   Net charges in funding standard account used to offset the deficit reduction contribution. Enter

a negative number if less than zero . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12l**

**m** Unpredictable contingent event amount:

(1) Benefits paid during year attributable to unpredictable contingent event . . . **m(1)**

(2) Unfunded current liability percentage. Subtract the percentage

on line 12d from 100% . . . . . . . . . . . . . . . . . . . **m(2)**    %



(3) Enter the product of lines 12m(1) and 12m(2) . . . . . . . . . . . **m(3)**

(4) Amortization of all unpredictable contingent event liabilities . . . . . . . . **m(4)**

(5) "RPA '94" additional amount (see instructions) . . . . . . . . . . . **m(5)**

(6) Enter the greatest of lines 12m(3), 12m(4), or 12m(5) . . . . . . . . . . . . . . . . . . . . **m(6)**

**n**   Preliminary additional funding charge: Enter the excess of line 12k over line 12l (if any), plus line 12m(6),

adjusted to end of year with interest . . . . . . . . . . . . . . . . . . . . . . . . . . . **12n**

**o**   Contributions needed to increase current liability percentage to 100% (see instructions) . . . . . . . . . . . **12o**

**p**   Additional funding charge prior to adjustment. Enter the lesser of line 12n or 12o . . . . . . . . . . . **12p**

**q**   Adjusted additional funding charge. ( _____ .0 % of line 12p) . . . . . . . . . . . **12q**

0 8 0 4 2 5 0 5 0 0

EIN: 22-3122225
PN: 001

## New Bedford Fishermen's Pension Fund
## Schedule B, Line 6 – Summary of the Principal Plan Provisions

**Credited Service & Vesting Service**

| Number of Fishing Days | Years of Vesting & Credited Service |
|---|---|
| 85 through 87 | .50 |
| 88 | .704 |
| 89 to 124 | Pro-rated (carried 3 decimal places) .008 per day |
| 125 or more | 1.0 |

**Normal Retirement**

Eligibility — Age 60 with 5 years of Vesting Service, or age 65 and 5th anniversary of Plan participation, not later than April 1st following year employee attains 70 ½

Monthly Benefit — $25.00 monthly per year of credited service not to exceed 30 years of service

**Deferred Vested Retirement**

Eligibility — Break in Service after 5 years of Vesting Service

Monthly Benefit — Benefit in effect at the time of termination equal to the accrued Normal Retirement Benefit payable at age 60

**Disability Retirement**

Eligibility — Completion of 10 years of Vesting Service and one day of employment in the 12-month period preceding disability

Monthly Benefit — Benefit in effect at the time of disability equal to the accrued Normal Retirement Benefit payable immediately

**Pre-Retirement Death**

A. Eligibility — Attainment of Vesting status

Monthly Benefit — 50% Continuance to spouse commencing on employee's Normal Retirement Date, plus

B. Eligibility — 10 Years of Vesting Service and 125 fishing days in the 12-month period preceding the date of death

Benefit — Lump sum amount payable to beneficiary as follows:

| Years of Vesting Service | Amount of Benefit |
|---|---|
| 10 - 14 | $10,000 |
| 15 – 19 | $15,000 |
| 20 or more | $20,000 |

**Post-Retirement Death**

Eligibility — Payable in the event that the Death benefit payable from the New Bedford Welfare Plan is less than $7,500

Benefit — $7,500

**Vesting** — 100% after 5 years of Vesting Service

**Spouse's Benefit** — A 50% Q.J.S.A., actuarial equivalent of Life annuity

EIN: 22-3122225
PN: 001

## NEW BEDFORD FISHERMEN'S PENSION FUND

### Schedule B, Line 6 – Statement of Actuarial Assumptions

| | |
|---|---|
| 1. **Actuarial Cost Method** | *Aggregate Funding Method* |
| 2. **Asset Valuation Method** | *Market Value.* |
| 3. **Interest** | *6.50% for Funding Standard account* <br> *6.55% for Current Liability* |
| 4. **Retirement Age** | 60 |
| 5. **Mortality** | GAM 83 |
| 6. **Withdrawal** | None |
| 7. **Disability:** | None |
| 8. **Expenses** | $138,653 |
| 9. **Incomplete data** | *Age and service characteristics of the "unknown" data were assumed to be similar to the known data.* |

# Memorandum

**To:**    Mary Kelleher

**From:** John A. Markey, Jr.

**Date:** 11/9/2005

**Re:**    Withdrawal Liability - F/V Lutador

---

This memorandum is a follow up to our recent conference call addressing the issues and differences between Jason Denton's review of the withdrawal liability for F/V Lutador and the calculation prepared by Basil Castrovinci Associates (BCA) for the New Bedford Fishermen's Pension Fund. I have had an opportunity to discuss the matter with Mr. Denton and to review the 2000 paperwork which you provided to this office. I believe that the dialogue has narrowed the issues.

Without conceding the matters raised in my last memorandum - specifically Mr. Castrovinci's decision to charge for costs and the accuracy of the 2000 contributions, I am willing to proceed to a settlement of the case if your client is willing to use the actual (and more accurate) figure of 3.84% for anticipated expenses / costs. If your client is willing to proceed in this manner, the case can be resolved without need for further litigation. The basis for this request and the associated calculations are as follows:

In the pension fund, the administrative expenses / costs are separately identified and included in the calculation of annual funding requirements for the plan. The intent seems to be that future administrative expensive / costs of the plan be paid for over the future working lifetime of active participants. The administrative expenses being funded should generally be updated in each valuation as the actuary's best estimate of future experience.

In the January 1, 2004 valuation report prepared by Mr. Castrovinci, the estimated administrative expenses / costs are shown on page 4, Exhibit B. This page shows annual expenses of $123,000 being funded over an expected future working lifetime of 7.5666. This generates an assumed present value of future administrative costs of $930,691.80. This represents 3.84% of the vested liabilities at January 1, 2004 of $24,235,493.

Since the valuation report is explicitly funding for the actuary's best estimate of future administrative costs, it makes more sense to add this amount (3.84%) to vested liabilities in the calculation of withdrawal liability rather than the (5%) used without any explication or justification.

1

*November 9, 2005*

Using the assumption for expenses as contained in the valuation report (3.84%), the calculation of withdrawal liability for FV Lutador would be as follows:

(1) Vested Liability at 1/1/2004 =                                          24,235,493.00

(2) Estimated Admin Costs =                                                930,691.80

(3) Assets at 1/1/2004 =                                                   24,387,749.00

(4) Unfunded Liability for withdrawal purposes (1)+(2)-(3) =                778,435.80

(5) FV Lutador plan contributions in past 5 years =                         73,056.00

(6) Total plan contributions in last 5 years =                           1,014,096.00

(7) Preliminary FV Lutador Withdrawal Liability (4)*(5)/(6) =               56,078.92

(8) Withdrawal Liability Adjustment per section 9.6(b) - 0.0075*(4) =        5,838.27

                                                                    ―――――――――

(9) Withdrawal Liability for FV Lutador (7) - (8) =                   **50,240.65**

Once you have reviewed this memorandum with your client and Mr. Castrovinci, please contact me to discuss whether we can resolve the case without further expense to either party.

Thanks you for your anticipated cooperation.

2