UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 04-12433-JLT

NEW BEDFORD FISHERMEN'S PENSION )
TRUST FUND, BY ITS TRUSTEES, )
)
    Plaintiff )
)
v. )
)
SILVA FISHING CORP., OWNER OF THE )
F/V LUTADOR, )
)
    Defendant )

### DEFENDANT'S RULE 26 EXPERT DISCLOSURE OF ACTUARIAL EXPERT JASON DENTON

Pursuant to F.R.C.P. 26(a)(2)(B), the plaintiffs hereby disclose Mr. Jason Denton an expert witness.

**Question One:**

A written expert report prepared and signed by the expert witness.

**Answer One:**

See Exhibit A: Expert Report of Jason Denton.

**Question Two:**

The data or other information considered by the witness in forming his or her opinion.

**Answer Two:**

See Exhibit A: Expert Report of Jason Denton.

**Question Three:**

Any exhibits to be used as a summary of or in support of the opinions.

**Answer Three:**

See Exhibit A: Expert Report of Jason Denton. Defendant reserves the right to supplement this response in a timely manner before trial.

**Question Four:**

The qualifications of the witness; all publications within the preceding ten years.

**Answer Four:**

See Exhibit B attached: Curriculum Vitae of Jason Denton. Mr. Denton has not published any articles in the preceding ten years.

**Question Five:**

The compensation paid to the witness for study and testimony.

**Answer Five:**

Mr. Denton has been compensated $250 per hour for his services. His billing to date has totaled approximately $4,000.

**Question Six:**

A listing of any other cases in which the witness has testified as an expert at trial or by deposition with in the preceding four years.

**Answer Six:**

1. Gagan v. Gagan, Kent County (RI) Municipal Court - March 21, 2005
2. Davala v. Town of Merrimack, (NH) Superior Court - May 10, 2005

        SILVA FISHING CORP.
        By its Attorney,

        JOHN A. MARKEY, JR., ESQUIRE
        MOSES SMITH & MARKEY, LLC
        50 Homers Wharf
        New Bedford, MA  02740
        (508)993-9711
        BBO #633540

Date: September 7, 2006

# Silva Fishing Corporation

## Report of Withdrawal Liability Review

Prepared By:

**The Angell Pension Group, Inc.**
**10 Hemingway Drive**
**East Providence, RI  02915**
**Telephone (401) 438-9250**

June, 2006

# TABLE OF CONTENTS

| | |
|---|---|
| SECTION I | Introduction |
| SECTION II | Descriptive Information |
| SECTION III | Actuarial Methods |
| SECTION IV | Actuarial Assumptions |
| SECTION V | Summary of Results |
| SECTION VI | Appendix - Detailed Calculations |

## I. INTRODUCTION

The Angell Pension Group, Inc. was retained by attorney John A. Markey, Jr. to review a calculation of withdrawal liability prepared for the Silva Fishing Corporation. The withdrawal liability resulted from the sale of the FV Lutador and it's subsequent withdrawal from the New Bedford Fishermen's Pension Fund (the "Pension Fund").

The purpose of this report is to present the results of our review and alternate liability calculations as well as detail the methods and assumptions used.

This report was based on information submitted by Mr. Markey to our firm including the contribution history and assumptions used in the calculation of withdrawal liability prepared by Basil Castrovinci Associates Inc. Pension plan documents and recent actuarial valuation reports for the Pension Fund were also provided.

The calculations reported herein have been made on a basis consistent with our understanding of applicable Standards of Practice. To the best of my knowledge, the information contained in this report was determined in accordance with the Pension Fund's retirement program. In addition, no relationship exists with the petitioner or Pension Fund that impairs the objectivity of my work.

_____     _____6/20/2006_____
Jason A. Denton, A.S.A., E.A.                Date
Director, Actuarial Services

## II. DESCRIPTIVE INFORMATION

*New Bedford Fishermen's Pension Fund*

The Pension Fund is a multiemployer pension plan which provides retirement, death and disability benefits to covered employees of participating employers. Participating employers agree to make contributions to the Pension Fund on behalf of it's covered employees as determined by the Pension Fund in an actuarially sound fashion. Participating employers also agree that they will be liable for a pro-rata portion of any unfunded vested benefits which exist at they time they withdraw from the Pension Fund.

*Unfunded Vested Liability*

The accrued vested liability of the Pension Fund is determined annually as part of the actuarial valuation prepared as of January 1st of each year. Unfunded vested liability is the difference between the accrued vested liability as of January 1st and the adjusted market value of assets in the Pension Fund's trust as of the valuation date.

*Adjusted Market Value of Assets*

Prior to comparing assets and liabilities for purposes of calculating withdrawal liability, the market value of assets is adjusted downward to reflect the estimated cost of future expenses paid from the trust related to the administration of the Pension Fund and the processing of participants' benefits.

# III. ACTUARIAL METHODS

Withdrawal liability calculations are determined in accordance with Article IX of the New Bedford Fishermen's Pension Regulations as amended on January 21, 2004.

Section 9.3 of the Plan mandates the use of the Rolling Five (One Pool) Method for determining an individual employer's unfunded vested benefit liability upon withdrawal. Under this Method, the amount of an employer's unfunded vested benefit liability upon withdrawal is determined as the product of (A) and (B) where:

(A) is the unfunded vested benefit liability for the Pension Fund as determined at the last day of the Plan Year preceding the Plan Year in which the withdrawal occurs. This unfunded liability is adjusted if there are outstanding payments due from employers who withdrew from the Pension Fund in prior years. And,

(B) is a fraction, the numerator of which is the total amount required to be contributed by the individual employer to the Pension Fund for the five full Plan Years ending before the withdrawal date and the denominator of which is the total amount required to be contributed to the Pension Fund by all employers for the same five Plan Years plus any contributions required in a prior plan year paid during the five Plan Years minus any contributions made during the five Plan Years by employers who withdrew from the Pension Fund during the five Plan Years.

Under Section 9.6 of the Plan, an employer's withdrawal liability is then determined as the employer's unfunded vested benefit liability reduced by the lesser of 0.75% of the Pension Fund's unfunded vested benefit liability or $50,000. This "Reduction Amount" is phased out if the employer's unfunded vested benefit liability exceeds $100,000.

Note that accrued benefit liabilities and assets as reported in the actuarial valuation reports prepared by Basil Castrovinci Associates, Inc. have been relied upon as actuarially sound and accurate and have not been independently verified as part of our review.

## IV. ACTUARIAL ASSUMPTIONS

The significant actuarial assumptions used in the calculation of the Pension Fund's accrued liability and in the calculation of withdrawal liability are as follows:

| | |
|---|---|
| *Retirement Age:* | Age 60 |
| *Mortality:* | 1983 Group Annuity Mortality Table |
| *Net Investment Rate of Return:* | 6.50% |
| *Administrative Expenses for Valuation Purposes:* | Actual expenses paid in the prior year rounded up to the nearest 1,000. This assumption has been $135,000, $125,000 and $123,000 in 2002, 2003 and 2004, respectively. |
| *Administrative Expenses for Withdrawal Liability Purposes:* | 5% of vested benefit liability |

## V. SUMMARY OF RESULTS

Silva Fishing Corporation was informed that their liability resulting from the withdrawal of the FV Lutador from the Pension Fund was $68,382. Exhibit 1 shows the details of this calculation prepared by Basil Castrovinci Associates Inc. as well as the asset, liability and contribution information used in the calculation.

A thorough review of this calculation uncovered two areas which we believe to be inaccurate or inappropriate. Our reasoning for this belief and the liability impact of these items are detailed below.

**2000 Plan Year Contributions**

It is our understanding that in 2000, employers participating in the Pension Fund were allowed to make required pension contributions into either the Pension Fund or the Welfare Fund. This is referenced in the annual valuation report as of January 1, 2001. Silva Fishing Corp directed contributions due for FV Lutador into the Pension Fund. Many other employer's contributed to the Welfare Fund instead. As a result, FV Lutador's 2000 plan year contributions to the Pension Fund as a percentage of total 2000 plan year contributions to the Pension Fund is significantly and artificially increased. In fact FV Lutador's percentage of total contributions is 6.1% on average for the four years of date not including 2000 and 20.9% for the 2000 plan year.

Section 9.3 (b) of the Plan states that the employer liability denominator shall include "the total amount required to be contributed by all Employers". The original withdrawal liability calculation does not include the total amount required to be contributed by all employers for the 2000 plan year. It only includes those required contribution which were directed to the Pension Fund. Actual total required contributions for the 2000 plan year should be used in the withdrawal liability calculation. This will serve to reduce the liability assessed to Silva Fishing Corp.

At the time of this report, the actual total amount of 2000 plan year required contributions was not known. Exhibit 2 has been prepared based on the assumption that the percentage of FV Lutador's contributions to the total of all participants would be similar to the 6.1% average of the other 4 years in the data. Based on this assumption, the withdrawal liability assessed to Silva Fishing Corp. is reduced to $56,700.

6/19/2006 11:56 AM

**Assumption of Future Expenses**

The present value of assumed future administrative expenses is removed from assets when determining the amount of any vested liability shortfall. Simply put, money spent on administrative fees is not available to pay for benefits. For withdrawal liability purposes, the Pension Fund assumes that the present value of future administrative fees is equal to 5% of the vested benefit liability of the Pension Fund. This assumption does not agree with administrative expenses being funded through the annual valuations and may no longer be appropriate. It is our understanding that this assumptions "has been 5% for ever" and it is not clear if this assumption is periodically evaluated for appropriateness.

This type of "liability load" assumption needs to be reviewed periodically for several reasons. For example, a plan improvement which increases the amount of benefit payments for future retirees could result in a significant increase in vested benefit liability while causing no material increase in expected administrative fees. Additionally, as participants continue to earn benefits under the plan, the rate at which benefits accrue may be very different than an expected annual inflation in administrative fees.

Obviously, the present value of future administrative fees is unknown and must be estimated somehow. What is known, however, is the amount of expected administrative fees being explicitly funded for by current participating employers.

In the 2004 actuarial valuation, the one year assumed administrative expenses is $123,000. The present value of the number of expected payments to be made by the current participating employers is 7.5666. This factor is used to determine what amount of the present value of expected future normal cost is attributed to the current year. For 2004, the Future Normal Cost of $3,153,619 is divided by the present value of expected payments to be made, 7.5666, to get the 2004 one year normal cost of $416,782. In the same way, we can determine the present value of expected administrative expenses being explicitly funded for in the valuation by taking $123,000 times 7.5666, or $930,692. This represents 3.84% of the Pension Fund's vested benefit liability as of January 1, 2004.

Exhibit 3 shows the detail of the withdrawal liability calculation utilizing the actual expected expenses being funded for in the actuarial valuation. Using this assumptions, Silva Fishing Corp.'s withdrawal liability is $50,241.

**Net Impact of Both Adjustments**

As detailed above, we believe that the use of the contribution history detailed in Exhibit 1 is incorrect and that a 5% expense assumption is not the best available estimate of expected future administrative fees. Exhibit 4 shows the net impact of both changes. Withdrawal liability under this scenario is $41,658.

6/19/2006 11:56 AM

# VI. APPENDIX

**Detailed Calculations**

Case 1:04-cv-12433-JLT   Document 21-2   Filed 10/02/2006   Page 9 of 15

# New Bedford Fishermen's Pension Fund
## Withdrawal Liability Calculation for FV Lutador

### Exhibit 1 - As Prepared by Basil Castrovinci Associates Inc.

| | |
|---|---:|
| 1. Pension Fund Vested Liability as of January 1, 2004 | 24,235,493 |
| 2. Market Value of Assets at December 31, 2003 | 24,387,749 |
| 3. 5% Expense Load | 1,211,775 |
| 4. Adjusted Market Value of Assets  (2) - (3) | 23,175,974 |
| 5. Unfunded Vested Liability  (1) - (4) | 1,059,519 |

6. FV Lutador Contribution History

| | |
|---|---:|
| 1999 Plan Year | 19,403 |
| 2000 Plan Year | 15,802 |
| 2001 Plan Year | 11,573 |
| 2002 Plan Year | 13,711 |
| 2003 Plan Year | 12,567 |
| Total | 73,056 |

7. Total Employer Contribution History
(for participating employers at January 1, 2004)

| | |
|---|---:|
| 1999 Plan Year | 209,491 |
| 2000 Plan Year | 75,729 |
| 2001 Plan Year | 216,488 |
| 2002 Plan Year | 261,823 |
| 2003 Plan Year | 250,565 |
| Total | 1,014,096 |

| | |
|---|---:|
| 8. FV Lutador Preliminary Withdrawal Liability (5) * (6 - Total) / (7 - Total) | 76,328 |
| 9. Liability Reduction Amount  (5) * 0.0075 | 7,946 |
| 10. FV Lutador Withdrawal Liability  (8) - (9) | 68,382 |

# New Bedford Fishermen's Pension Fund
## Withdrawal Liability Calculation for FV Lutador

### Exhibit 2 - Adjustment to Contribution History

| | |
|---|---:|
| 1. Pension Fund Vested Liability as of January 1, 2004 | 24,235,493 |
| 2. Market Value of Assets at December 31, 2003 | 24,387,749 |
| 3. 5% Expense Load | 1,211,775 |
| 4. Adjusted Market Value of Assets  (2) - (3) | 23,175,974 |
| 5. Unfunded Vested Liability (1) - (4) | 1,059,519 |

6. FV Lutador Contribution History

| | |
|---|---:|
| 1999 Plan Year | 19,403 |
| 2001 Plan Year | 11,573 |
| 2002 Plan Year | 13,711 |
| 2003 Plan Year | 12,567 |
| Total | 57,254 |

7. Total Employer Contribution History
(for participating employers at January 1, 2004)

| | |
|---|---:|
| 1999 Plan Year | 209,491 |
| 2001 Plan Year | 216,488 |
| 2002 Plan Year | 261,823 |
| 2003 Plan Year | 250,565 |
| Total | 938,367 |

| | |
|---|---:|
| 8. FV Lutador Preliminary Withdrawal Liability (5) * (6 - Total) / (7 - Total) | 64,646 |
| 9. Liability Reduction Amount  (5) * 0.0075 | 7,946 |
| 10. FV Lutador Withdrawal Liability  (8) - (9) | 56,700 |

# New Bedford Fishermen's Pension Fund
## Withdrawal Liability Calculation for FV Lutador

### Exhibit 3 - Adjustment to Expense Assumption

| | |
|---|---:|
| 1. Pension Fund Vested Liability as of January 1, 2004 | 24,235,493 |
| 2. Market Value of Assets at December 31, 2003 | 24,387,749 |
| 3. Actual Expenses Funded for in Valuation<br>123,000 * 7.5666 | 930,692 |
| 4. Adjusted Market Value of Assets (2) - (3) | 23,457,057 |
| 5. Unfunded Vested Liability (1) - (4) | 778,436 |

6. FV Lutador Contribution History

| | |
|---|---:|
| 1999 Plan Year | 19,403 |
| 2000 Plan Year | 15,802 |
| 2001 Plan Year | 11,573 |
| 2002 Plan Year | 13,711 |
| 2003 Plan Year | 12,567 |
| Total | 73,056 |

7. Total Employer Contribution History
(for participating employers at January 1, 2004)

| | |
|---|---:|
| 1999 Plan Year | 209,491 |
| 2000 Plan Year | 75,729 |
| 2001 Plan Year | 216,488 |
| 2002 Plan Year | 261,823 |
| 2003 Plan Year | 250,565 |
| Total | 1,014,096 |

| | |
|---|---:|
| 8. FV Lutador Preliminary Withdrawal Liability<br>(5) * (6 - Total) / (7 - Total) | 56,079 |
| 9. Liability Reduction Amount (5) * 0.0075 | 5,838 |
| 10. FV Lutador Withdrawal Liability (8) - (9) | 50,241 |

# New Bedford Fishermen's Pension Fund
## Withdrawal Liability Calculation for FV Lutador

### Exhibit 4 - Adjustment to Contribution History and Expense Assumption

| | |
|---|---:|
| 1. Pension Fund Vested Liability as of January 1, 2004 | 24,235,493 |
| 2. Market Value of Assets at December 31, 2003 | 24,387,749 |
| 3. Actual Expenses Funded for in Valuation<br>123,000 * 7.5666 | 930,692 |
| 4. Adjusted Market Value of Assets (2) - (3) | 23,457,057 |
| 5. Unfunded Vested Liability (1) - (4) | 778,436 |

6. FV Lutador Contribution History

| | |
|---|---:|
| 1999 Plan Year | 19,403 |
| 2001 Plan Year | 11,573 |
| 2002 Plan Year | 13,711 |
| 2003 Plan Year | 12,567 |
| Total | 57,254 |

7. Total Employer Contribution History
(for participating employers at January 1, 2004)

| | |
|---|---:|
| 1999 Plan Year | 209,491 |
| 2001 Plan Year | 216,488 |
| 2002 Plan Year | 261,823 |
| 2003 Plan Year | 250,565 |
| Total | 938,367 |

| | |
|---|---:|
| 8. FV Lutador Preliminary Withdrawal Liability<br>(5) * (6 - Total) / (7 - Total) | 47,496 |
| 9. Liability Reduction Amount (5) * 0.0075 | 5,838 |
| 10. FV Lutador Withdrawal Liability (8) - (9) | 41,658 |



A N G E L L

Jason A. Denton graduated from the University of Rhode Island with a degree in mathematics in 1994 and a Master of Science degree in mathematics in 1996. Prior to joining The Angell Pension Group, Inc. in 2004, Jason was a Benefits Consultant and Actuary with Watson Wyatt Worldwide. He has over nine years of experience advising clients in the design, compliance, funding and accounting of their retirement programs including qualified and nonqualified pension plans as well as postretirement welfare plans. Jason is an Associate of the Society of Actuaries, an Enrolled Actuary and is the Director of Actuarial Services.

# Jason Denton, ASA, EA

| | | | |
|---|---|---|---|
| **Experience** | 10/1996 – 10/2004 | Watson Wyatt Worldwide | Wellesley Hills, MA |

**Benefits Consultant/Actuary**

Lead consultant and actuary for various clients ranging in size from 500 to 15,000 participants
- Experience with retail, manufacturing, health care and insurance industries
- Plans include floor offset arrangements, mandatory contributions, cash balance and cash value plans, union groups, executive agreements, excess plans, deferred compensation plans, top heavy and nondiscrimination issues
- Experience with GAAP (FASB), NAIC (SSAP) and IAS (International) accounting standards for benefit programs

Project manager for largest benefits redesign project in office history
- Assisted client in developing one DB and DC benefit program for all US non-union employees (~20,000 employees in over 25 different programs)
- Created Excel tool to analyze employee impact and need for transition benefits
- Reviewed/prepared cost analysis of proposed DB and DC programs
- Organized retirement, communications, legal and client teams to develop multiple versions of projected benefit statements and transition guides
- Maintained project plans and determined work priorities of retirement staff of up to 20 employees to meet deadlines and budget

Other routine duties include the consulting and delivery as well as supervision and review of the following:
- Minimum/maximum funding requirements under IRC Sections 412 and 404
- Expense and disclosure for qualified, nonqualified and retiree medical plans
- Settlement, curtailment and partial plan termination accounting
- Nondiscrimination testing and government filings
- Benefit calculations and accrued/projected benefit statements

Assist with preparation of new business proposals
Conduct entry level and office-wide training classes on a variety of topics
Assist in recruiting and interviewing of entry level and experienced candidates

**Education**  University of Rhode Island  Kingston, RI
- MS Mathematics; May 1996
- BS Mathematics; May 1994; with highest distinction

**Actuarial Designations**  Obtained ASA 10/2001; EA 11/2003
Completed all courses for FSA (PD and FSA Seminar still required)

**Computer Skills**  Microsoft Office (Excel including Visual Basic macro programming, Word, Access and PowerPoint), Fortran